## TENNESSEE CONSOL. COAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9444.

Circuit Court of Appeals, Sixth Circuit.

Dec. 7, 1943.

Scott P. Crampton, of Washington, D. C. (Geo. E. H. Goodner and Scott P. Crampton, both of Washington, D. C., on the brief), for petitioner.

Irving Axelrod, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, and F. E. Youngman, all of Washington, D. C., on the brief), for respondent.

Before HICKS, HAMILTON, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

The question presented for review is whether petitioner shifted the burden of the tax imposed by the Bituminous Coal Conservation Act of 1935, 49 Stat. 991.

Petitioner, a corporation engaged in mining and selling coal, and rendering its tax returns on the accrual basis, filed an unjust enrichment tax return for 1936, denying any liability for the tax. The Commissioner found that the company had received income from unjust enrichment during that year, and determined tax thereon. The Board of Tax Appeals (now the Tax Court of the United States) sustained the ruling of the Commissioner.

Section 3 of the Bituminous Coal Conservation Act of 1935, provided for levy of an excise tax on the sale of bituminous coal, of 15% of the sale price at the mine and, also, for a credit or drawback of 90% of the tax if the coal producer accepted and complied with the code regulating the conduct of its business. The tax was payable monthly, for each calendar month, on or before the first business day of the second succeeding month; and the Act took effect on November 1, 1935. Petitioner subscribed to and operated under the Coal Commission established pursuant to the statute, thereby receiving the benefit of the 90% credit above mentioned, so that the coal tax amounted to 1½% of the sale price of its coal at the mine—or approximately three cents per ton. Petitioner filed tax returns, in accordance with the statute, for November and December of 1935, and January, February, and March of 1936. These returns disclosed the sales of coal and the amount of tax called for by the statute; but no such tax was ever paid by petitioner or accrued on its books or taken into consideration in its accounts in any manner. In December, 1935, petitioner obtained an injunction against collection of the tax and, when the Act was declared unconstitutional, was, accordingly, relieved of liability for the above-mentioned taxes.

However, Congress thereafter enacted a statute taxing, as income derived from unjust enrichment, amounts received by taxpayers from their customers, representing the above-mentioned tax that had been passed on in prices to the consumer or customer and not returned to the Government. It was provided that the extent to which the vendor shifted to others the burden of the tax, was presumed to be the difference between the selling price and the sum of the cost plus the "average margin." The average margin is defined as the average difference between selling price and the cost of similar articles sold by the taxpayer during his six taxable years preceding the initial imposition of the federal excise tax in question. Under this statutory formula, it is presumed, from the special facts in the instant case, that the petitioner shifted to others, the burden of the tax in question, in the amount of $3,346.15. It is claimed, however, by petitioner, that it did not shift this burden, and that it is not liable for any unjust enrichment tax, because of its successful rebuttal of the statutory presumption.

Section 501(i) of the Revenue Act of 1936, 26 U.S.C.A.Int.Rev.Code, § 700(i), provides that either the taxpayer or the Commissioner may rebut the presumption by proof of the actual extent to which the taxpayer shifted to others the burden of the tax; and it is set forth that such proof may include, but shall not be limited to, proof that the change or lack of change in the margins used in the statutory formula was due to changes in factors other than the tax.

It appears that on October 18, 1935, a union labor contract was entered into between petitioner and the United Mine Workers of America. Wages were thereby increased at that time, dating back to October 1, 1935. Prior to the above-mentioned labor contract, petitioner was selling coal on contract to several companies. Most of these customers refused to pay prices in excess of that specified in their agreements. After January 1, 1936, there were only three customers under contract to whom coal was shipped at an increase over their contract prices.

The Nashville, Chattanooga & St. Louis Railway Company purchased more than 50% of petitioner's total tonnage for the tax period. After the labor wage increase, the railway company, in October, 1935, agreed that it would pay $2.15 a ton—an increase of ten cents a ton over that agreed upon in a prior, verbal contract. But about the middle of April, 1936, payment of the increased price was refused by the railway and, thereafter, it received its coal from petitioner at the former price of $2.05 a ton. The increase of ten cents a ton on the coal sold to the railway during the taxable period, amounted to $5,637.47; the increase of labor costs for this coal, amounted to $3,382.65. On the increase of price, petitioner received, for the coal in question, $2,254.82 more than the increase in labor costs.

On all coal sold on spot orders during the period, January 1 to May 18, 1936, petitioner received an average realization of $1.55 per ton on mine-run coal; and an average realization on all coal sold on contract, of $2.06 per ton on mine-run. The average realization to petitioner, on all coal sold, was $1.89 a ton, for the above-mentioned period.

 The statutory presumption that the tax is shifted is rebuttable by proof of the actual extent to which it has been shifted, or that it has not been shifted at all.

The presumption is based primarily upon the difference in prices charged during the base period and the tax period; and if the prices are higher during the tax period, the burden is upon the taxpayer to show that such increase of prices was not the result of, and does not include, the tax. For the higher price is presumed to be proof that the tax was shifted to the consumer. Proof in rebuttal of the presumption may be made by the taxpayer and may include proof that the change in the margin was due to factors other than the tax, such as change in the costs of production. But the taxpayer is not limited thereto, and if it is proved that it did not shift the tax, the burden is met.

The evidence discloses that the average price per ton did not increase, but decreased, after the incidence of the tax, as compared with the price for the prior three-month period, four-month period, and twelve-month period.[1]

During the tax period, January 1 to May 18, 1936, the average realization per ton after deduction of cost of labor and supplies, was $.061 more than for the base period, 1929–1934; but this realization was $.058 less than for 1934, $.117 less than for 1935, and $.033 and $.130 less than for the first four-month periods of 1934 and 1935, respectively. During the period in which the coal tax was effective—November 1, 1935, to May 18, 1936—the average realization per ton was $.049 less than it was for the year 1935. The average realization per ton after deduction of expenses of labor and supplies for this period, was $.013 less than for 1934, and $.072 less than for 1935.

We are unable to determine how much weight the Board attached to the difference in margins between the base period and the tax period. The difference, of course, resulted in the presumption that the tax was shifted.

The statutory presumption, based on increase of price in the tax period, over that of the base period, is posited upon the ground that an increase of price in the tax period over normal price, indicates that the tax has been slipped into the increased price. But here the average price for the tax period was less than the average price of the two prior years. There is nothing in the instant case to indicate that the tax of three cents per ton was shifted to the 1936 price. On the contrary, the evidence is persuasive that it was not done.

It seems, however, that decision was rested on the evidence that in certain sales, prices were increased in an amount that would include the increased cost per ton, plus the tax, rather than on the failure of petitioner to account for the spread in margin. In the Board's findings of fact, it was stated that petitioner, because of its inability to recover its increased labor costs on contract customers, found it necessary to raise prices on spot sales as much as possible in order to overcome the loss of

[1] Computations, made from the evidence, show the following:

| | Average Realization Per Ton | Average Cost of Labor Per Ton |
|---|---|---|
| 1929–1934 (base period) | $1.722 | (no evidence) * |
| 1934 | 1.896 | $1.024 |
| 1935 | 1.974 | 1.022 |
| 1936 | 1.914 | 1.055 |
| January to May 18, 1936 | 1.894 | 1.067 |

| | Average Realization After Cost of Labor | Average Realization After Cost of Labor and Supplies |
|---|---|---|
| 1929–1934 (base period) | (no evidence) * | $ .635 |
| 1934 | $ .872 | .754 |
| 1935 | .952 | .813 |
| 1936 | .859 | .707 |
| January to May 18, 1936 | .827 | .696 |

| | Realization Per Ton After Cost of Labor and Supplies, for Comparative Periods—January 1 to May 1 |
|---|---|
| 1934 | $ .729 |
| 1935 | .826 |
| 1936 | .723 |
| January to May 18, 1936 (tax period) | .696 |

* Cost of labor for above period is consolidated with cost of labor and supplies.

profit on the contract sales; and, further, that petitioner did not recover the aggregate of its increased labor costs on all of its sales of coal during the period January 1 to May 18, 1936. Whether this means that petitioner did not recover the aggregate of its increased labor costs on the aggregate of its sales during that period, is not clear. But petitioner's evidence is proof that the latter is true. The Board, however, found that, while petitioner did not shift the burden of its liability for the tax in certain sales, it shifted it in others; and, to arrive at this conclusion, it segregated various sales of coal. It found that in cases of certain sales under contract, no increases over previous contract prices, had been made; but that there had been an increase, after the execution of the labor agreement, in the prices of coal sold to certain other customers.

■ That increased prices were charged on certain sales, insufficient, however, to absorb the aggregate increased costs, is not indicative of a shifting of the burden of the tax, but, rather, the contrary. Aggregate, and not individual sales, are the criteria for computing the margin for the base period and for the tax period, as well as for the computation of the tax. The levy was made on sales of bituminous coal, regardless of type or shape of coal, or whether it was sold on contract or spot order. Selected and segregated sales cannot be said to evidence the fact that the tax has been shifted, merely because the increase in such particular sales might indicate that the increased price included the tax, when, on the whole, the decrease in price on aggregate sales contradicts such a conclusion.

The increase of wages in October, 1935, resulted in an increase in costs of labor of $.06 per ton during the period January 1 to May 18, 1936. The average realization per ton, for this period, was reduced $.002 per ton from 1934, and $.06 per ton from that of the prior four-month and twelve-month periods. Petitioner's average realization per ton, after deducting labor and supplies, was less in the tax period January 1 to May 18, 1936, than for the years 1934, or 1935. It was also considerably less than for the comparative four-month period in each of the two preceding years. From the above, the only reasonable conclusion to be drawn is that petitioner did not recover the coal tax in its prices during the period January 1 to May 18, 1936, and, fur-

thermore, that it did not even recover the wage increase growing out of the labor union contract of October, 1935. The evidence introduced by petitioner is convincing that the burden of the tax of three cents per ton, actually, was not shifted, and that the taxpayer did not recover it in its prices to purchasers.

■ From the foregoing, we are of the opinion that petitioner's proof was sufficient to rebut the presumption that the tax was shifted to the prices paid by consumers during the tax period.

The decision of the Board of Tax Appeals (now the Tax Court of the United States) is, accordingly, reversed and remanded for further proceedings in accordance with this opinion.