**HELVERING, Com'r of Internal Revenue, v. E. REGENSBURG & SONS.**

No. 33.

Circuit Court of Appeals, Second Circuit.

Jan. 6, 1944.

Fred E. Youngman, of Washington, D. C., for petitioner.

Prew Savoy, of Washington, D. C. (Kenneth Carroad, of New York City, of counsel), for respondent.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This case comes back to us after a remand upon appeal (petition to review) from an order of the United States Processing Tax Board of Review. E. Regensburg & Sons v. Helvering, 130 F.2d 507. That Board then entered a new order on December 3, 1942, granting an award for the full amount; the Commissioner filed a petition for rehearing on December 30th, but as the Board passed out of existence at the end of the year, the petition for rehearing was referred to the Tax Court which denied it. The case comes up upon a petition to review the order of the Board of December 3, 1942, which granted the refund. We refer to our former opinion for a statement of the general facts, from which it will appear that we held that the taxpayer had shown that the four factors in its accounting on which it had relied, might absorb the processing tax. We therefore directed the Board to appraise the effect of these factors, to make proper findings, and to award any refund which the facts justified. The case comes before us upon the old record, supplemented by a new set of findings to which the Commissioner does not object except to the conclusory finding that the taxpayer bore the burden of the tax, and to the allowance of certain expenses as part of the costs of production.

The substance of the findings is now as follows. During the "tax period"—October 1, 1933 to May 31, 1935—although the taxpayer sold at the same prices as during the "before and after period"—the "base period"—the "gross selling value" per pound was greater, apparently owing to a difference in selling discounts. The record does not show just how the figures were reached, but as both sides appear to accept them, we shall do so as well. The difference, so calculated, between the "average margin" for the "tax period"—$4.14620—and that for the "base period"—$3.93481—was $.21139; and this is the amount for which the taxpayer is obliged to account. It did so, first by proving that there had been a decrease in the import duty during the "tax period" of $.0504; and second, that improvements in processing the tobacco had reduced the cost of the cigars by $.05783. These two factors—amounting to $.10823—we held upon the first appeal that the taxpayer was not obliged to pass on to its buyers, but could use to reduce the difference between the

"average margins". When so used that difference becomes $.10316 ($.21139—$.10823). However, the "average margin" for the "tax period" included the processing tax as a deduction, § 907(b) (1) of the Revenue Act of 1936, 7 U.S.C.A. § 649(b) (1); and this was $.04669. The amount to be absorbed by "costs of production" § 907(e) (1) (B), was therefore $.14985 ($.10316 plus $.04669). The taxpayer undertook to prove that this was absorbed by increases in such costs during the "tax period" amounting to $.17649 ($2.91865—for the "tax period"—minus $2.74216, for the "base period"). These "costs" were made up principally of salesmen's commissions and expenses, salaries, rent, insurance, advertising, revenue stamps, boxes and labels, and labor. If allowable, they did absorb more than the difference between the "average margins", plus the processing tax, and left an unabsorbed deficiency of $.02664 ($.17649—$.14985).

The Commissioner challenges this result upon two grounds. First, he says that conceding for argument that all the expenses deducted were properly "costs of production", they should not have been deducted, because of the following language in § 907 (e) (1): "If the Commissioner determines that the difference in average margin was due in part to the tax and in part to the increase in other costs, he shall apportion the change in margin between them." The Board was the "Commissioner" in this instance, and whether the difference in "average margin was due in part to the tax" was for it to determine. It did not so determine; it determined the opposite: i. e. that the increase was due to increased "costs of production," and there was support in the evidence for its finding. No one could say a priori whether the difference was in any part "due * * * to the tax", or altogether to increased "other costs"; but there was little likelihood that the taxpayer reduced its discounts in order to recoup itself, which must be the assumption if that action was "due" in any part to the tax. At any rate the Commissioner has certainly not shown that the change in discounts was actuated in any degree by that circumstance.

■ The second point is that certain of the expenses allowed were not "costs of production" within § 907(e) (1) (B). Although in our first opinion we directed

the Board not to disturb the findings as to expenses, the point was not raised that some of them were not "costs of production," properly speaking, and in any case it is open upon this appeal. Those items to which the Commissioner objects are as follows: "salesmen's commissions, salesmen's traveling expense, advertising, and depreciation of furniture and fixtures." "Costs of production", could not justly exclude any of these, except possibly advertising. The purpose of the statute was to restore to the taxpayer any part of the tax whose burden he did not succeed in shifting upon his customers; and it is not consistent with that purpose to hold that he shifted it so far as he did not himself carry any increases in these expenses. Selling commissions and expenses are so obviously a part of the "costs of production"—production not being distinguishable in this statute from distribution—that no argument seems necessary; they are universally regarded as deductions from the selling price. Depreciation of the machinery used in manufacturing could also not be challenged, and we perceive no relevant distinction between that and depreciation of furniture and fixtures—indeed, "fixtures" probably included machinery. Advertising may or may not be of the same kind; a large manufacturing company will frequently find that its sales vary in an almost direct proportion to the amount expended every year, so that the sales may be taken as what mathematicians call a "function" of the advertising. On the other hand, cumulative advertising will often go to build up the good will of a business, and may—in part at any rate—be properly charged to capital account. It is always difficult—indeed, it is generally impossible—to separate the contribution of any particular year's advertising between these two. In the case at bar, even if only half the advertising expenses were charged as current selling expenses the "costs of production" would still absorb the decrease in the discounts and the consequent increase in "gross sales value." Upon the first hearing the Board found that the whole advertising was part of the expenses to be deducted and that finding was conclusive. The finding, not being "a clear-cut mistake of law * * * must stand", Dobson v. Commissioner, 320 U.S. —, 64 S.Ct. 239, 247; "a question of law" was not "unmistakably involved," Helvering, Commission-

er v. Heininger, 320 U.S. ——, 64 S.Ct. 249, 254; Fuld v. Commissioner, 2 Cir., 139 F.2d 465.

Order affirmed.