## CORNETT–LEWIS COAL CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 9508.

Circuit Court of Appeals, Sixth Circuit.

April 12, 1944.

James E. Fahey, of Louisville, Ky. (Chas. I. Dawson, James E. Fahey, and Woodward, Dawson & Hobson, all of Louisville, Ky., on the brief), for petitioner.

F. E. Youngman, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, A. F. Prescott, and F. E. Youngman, all of Washington, D. C., on the brief), for respondent.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

Petitioner was engaged in the business of mining coal, and was subject to the provisions of the Bituminous Coal Conservation Act, 49 Stat. 991, which became effective November 1, 1935. Section 3 of the Act imposed an excise tax on the sale of bituminous coal of fifteen percent of the sale price at the mine, and provided for a credit or drawback of ninety percent of the tax if the coal producer accepted and complied with the Code regulating the conduct of his business. The tax was payable monthly beginning November 1935. Petitioner did not become a member of the Code promulgated under the Act but attacked its constitutionality in the United States District Court for the Western District of Kentucky and in connection with that action it paid into the registry of the court one and one-half percent of the sale price of the coal sold by it at its mines during the period the action was pending. The Bituminous Coal Conservation Act was declared unconstitutional on May 18, 1936, in Carter v. Carter Coal Co., 298 U. S. 238, 56 S.Ct. 855, 80 L.Ed. 1160, at which time petitioner withdrew the money theretofore deposited and at no time paid into the Treasury of the United States any portion of the tax imposed under the Act.

Section 501(a) (1) of the Revenue Act of 1936, Internal Revenue Code, 26 U.S. C.A. Int.Rev.Code, § 700(a) (1), imposed a tax equal to eighty percentum thereof upon the net income of every individual or corporation which came "from the sale of articles with respect to which a federal excise tax was imposed on such person but not paid which is attributable to shifting

to others to any extent the burden of such federal excise tax."

Petitioner filed non-taxable returns under the Act for each of the years 1935 and 1936. The Commissioner on audit and review determined that petitioner had shifted to others the burden of the tax under the Bituminous Coal Conservation Act, but not paid by it, in the amounts of $1,579.14 and $3,526.81 respectively, for the years 1935 and 1936. The sum found to have been shifted was the entire tax for the year 1935 and $3,526.81 of the 1936 tax of $3,962.59. The Tax Court of the United States found that petitioner had shifted $1,039.67 of this tax for 1935 and $2,582.36 for 1936. The resulting deficiencies in income taxes was $831.73 for the calendar year 1935 and $2,582.36 for the calendar year 1936.

Section 501(f) of the Act, Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 700(f), provides alternative methods of computing the presumed extent to which such net income of the taxpayer is attributable to shifting to others the burden of the unpaid excise tax. So far as material here, section (e) (1) of the Act provides that the extent to which the taxpayer shifted to others the burden of an excise tax shall be presumed to be an amount computed by deducting from the selling price of the article the sum of the cost of such article plus the average margin with respect to the quantity involved and section (f) (1) defines the term "margin" to mean the difference between the selling price of articles and the cost thereof and the term "average margin" to mean the difference between the selling price and the cost of similar articles sold by the taxpayer during his six taxable years preceding the initial imposition of the excise tax.

Under the statutory formula petitioner presumably received for the coal sold by it during the year 1935, $20,161.34 and during the year 1936, $44,739.44 more than it would have received for the same tonnage for the year previous to the imposition of the excise tax. Thus, there arises a statutory presumption that petitioner shifted to others for the years in question its entire excise tax.

Section 501(i) of the Act, Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 700(i), provides that the taxpayer may rebut the presumption established by subsection (e) by proof of the actual extent to which the taxpayer shifted the tax. Said section is found in the margin.[1]

The Supreme Court has said in reference to this statute that the burden does not rest on the taxpayer to show with absolute certainty the reason for the variation in prices between the base period and the tax period, but that in the light of the context and the entire scheme of the administrative provision, a taxpayer was to be afforded full opportunity to present any evidence which might be appropriate to overcome the statutory presumption. An-

[1] "(i) Either the taxpayer or the Commissioner may rebut the presumption established by subsection (e) by proof of the actual extent to which the taxpayer shifted the burden of the Federal excise tax. Such proof may include, but shall not be limited to:

"(1) Proof that the change or lack of change in the margin was due to changes in factors other than the tax. Such factors shall include any clearly shown change (A) in the type or grade of article or materials, or (B) in costs of production. If the taxpayer asserts that the burden of the tax was borne by him while the burden of any other increased cost was shifted to others, the Commissioner shall determine, from the respective effective dates of the tax and of the other increase in cost as compared with the date of the change in margin, and from the general experience of the industry, whether the tax or the increase in other cost was shifted to others. If the Commissioner determines that the change in margin was due in part to the tax and in part to the increase in other cost, he shall apportion the change in margin between them.

"(2) Proof that the taxpayer modified contracts of sale, or adopted a new contract of sale, to reflect the initiation, termination, or change in amount of the Federal excise tax, or at any such time changed the sale price of the article (including the effect of a change in size, package, discount terms, or any other merchandising practice) by substantially the amount of the tax or change therein, or at any time billed the tax as a separate item to any vendee or indicated by any writing that the sale price included the amount of the tax, or contracted to refund any part of the sale price in the event of recovery of the tax or decision of its invalidity; but the taxpayer may establish that such acts were caused by factors other than the tax, or that they do not represent his practice during the period in which the articles in question were sold."

niston Mfg. Co. v. Davis, 301 U.S. 337, 354, 57 S.Ct. 816, 81 L.Ed. 1143.

In applying this statute it must be recognized that normal production output or operation of a particular taxpayer may be interrupted or diminished in one or more of the years in the base period because of events unusual or peculiar in the experience of the taxpayer occurring during that period or that the business of the taxpayer may be accelerated or depressed in either period because of temporary economic conditions, and that the high cost of production, because of the increased cost of material or labor or other economic factors occurring in the tax period, may account for the increased sum received for the article subject to the excise tax over that presumed to have been received in the base period.

Petitioner was engaged in a highly competitive business. Its product had to move into sale channels immediately after production because it had no storage facilities. It was impossible to cease mining operations temporarily without incurring heavy operating costs. No part of the excise tax as a separate item appeared in any way in petitioner's bills to customers and no price changes were made to reflect specifically the excise tax in sales contracts at the time or subsequent to the effective date of the tax. Petitioner made no agreements with customers for refundment to them of any of the excise taxes paid or to be paid by it. There was no reduction in royalties payable and no change in overhead operating expenses after the inception of the excise tax.

Petitioner, together with its competitors, granted a wage increase effective October 1, 1935, of approximately 15 cents per ton. The excise tax under the Bituminous Coal Act became effective November 1, 1935. A schedule showing petitioner's average monthly realization for coal mined from January, 1934, to December, 1936, inclusive, is found in the margin.[2]

It is clear from the undisputed evidence that the average realization price per ton of coal received by petitioner after the effective date of the Act was less than during the month that immediately preceded it. The increase of fifteen cents per ton in wages became effective October 1, 1935, a month earlier than the excise tax. Petitioner attempted to reflect the wage increase in the price of its coal and the average realization per ton for September, 1935, was $1.994. In the month of October it increased to $2.146. In November, 1935, the first month the tax and wage increase were both in effect, the average realization was $2.044 per ton. At no time after the tax became effective until it ceased to apply, did the average realization per ton reach the level for the month immediately preceding the tax. The Tax Court, while conceding the evidentiary weight of the decrease in the average realization price per ton immediately following the imposition of the tax, undertakes to overcome it by attributing the decrease to a higher percentage of the mining and selling of the smaller sizes of coal after the effective date of the tax. This ultimate fact is based on the primary fact that petitioner in 1935 entered into three contracts for the sale of slack and mine run coal which it is said by the Court resulted in the greater part of the total sales being represented by a lower price than prevailed in previous months. It is true these contracts were entered into, but there is nothing in the record to show that such contracts increased the quantity of the sales

2 1934

| | | | |
|---|---|---|---|
| January | $1.772 | July | $1.999 |
| February | 1.823 | August | 2.081 |
| March | 1.810 | September | 2.092 |
| April | 1.792 | October | 2.046 |
| May | 1.945 | November | 2.175 |
| June | 2.021 | December | 2.371 |

$1.995 yearly average

1935

| | | | |
|---|---|---|---|
| January | $2.363 | July | 1.951 |
| February | 2.301 | August | 1.929 |
| March | 2.073 | September | 1.994 |
| April | 1.935 | October | 2.146 |
| May | 1.953 | November | 2.044 |

Excise tax became effective November 1.

| | | | |
|---|---|---|---|
| June | 1.935 | December | 2.077 |

$2.060 yearly average

1936

| | |
|---|---|
| January | $2.097 |
| February | 2.132 |
| March | 1.991 |
| April | 1.682 |
| May | 1.920 |

Act declared unconstitutional May 18, 1936.

| | |
|---|---|
| June | 1.910 |
| July | 1.912 |
| August | 1.924 |
| September | 2.004 |
| October | 2.072 |
| November | 2.023 |
| December | 2.132 |

$1.983 yearly average

of small sized coal in proportion to block coal. It is a matter of common knowledge in the mining of bituminous coal in the Commonwealth of Kentucky that the relative sizes of the coal remain constant and that all sizes are lumped together in sales. As we view it, there is no evidence in the record from which an ultimate fact could be found or an inference drawn that the decrease in the price per ton realization was due to the type or grade of the coal mined.

Petitioner made some sales from September 30, 1935, to November 29, 1935, of 2-inch and 5-inch block coal at an increase in price of 25 cents per ton. While the price on this particular grade of coal exceeded the increased labor cost per ton, it is not evidence that the increase was intended in any way to make the incidence of the tax fall on the consumer. This increase in price took place a month before the tax became effective and the price realization on these particular sales has been used in arriving at the average realization found in the schedule in the footnote. There is no evidence in the record that petitioner specifically added the excise tax to the sale price of its coal. The Tax Court reached the conclusion that the excise tax was concealed in the gross price per ton. The only ground for this conclusion is that petitioner failed to prove with nicety the reason for the discrepancy between the assumed price of the coal, if sold at the average for the base years, and the sum actually received for an equal number of tons in the tax years.

The statute in question levied a tax on taxpayer's net income realized by his retention of excise taxes collected from his vendees. The statute did not levy a tax on a sum equal to the increased gross price received for an article over the sum received for the same article in an earlier year. The difference in the price between that received for an article in the tax year and the average price established over a six year period is a substitute for evidence that the taxpayer in fact shifted the excise tax to the purchasers of his product. Subsection (i) of the Act is a sort of legislative contrivance for the discovery of truth which when applied to some businesses is an artificial expedient.

■ It is the function of courts to interpret statutes to reflect the intention of the Congress and there is no more persuasive evidence of the purpose of a statute than the words and phrases contained therein. If the language of the statute plainly expresses the purpose of the Congress there is nothing to do but follow it unless an absurd or futile result is obtained and one plainly at variance with the policy of the legislation as a whole.

Subsection (e) provides a base for a preliminary determination of net income. If the presumption in the statute is given an evidentiary preference, the purpose of the statute as a whole would be thwarted and there would be taxed sums from sources other than the excise exactions.

In applying the statute, if the Commissioner finds that the taxpayer realized a gross sales price for the article in excess of the average margin price and no fact is made to appear overcoming the statutory presumption, the Commissioner is authorized to assess a deficiency in income taxes equal to the increased realization of gross profits by the taxpayer from sales, if the taxes do not exceed the profit. On the other hand, if the facts show that the taxpayer has received less than the average margin price, then before the Commissioner is authorized to make a deficiency assessment, he must determine from some competent evidence that the taxpayer has in fact shifted to others the burden of the federal excise tax.

■ Some of the evidence to be considered is particularized in the statute but other evidence may be also used. The imposition of a tax cannot rest purely on a statutory presumption if such presumption is inconsistent with the facts. Presumptions can stand only when compatible with the conduct of those to whom they apply and must give way when in conflict with clear, distinct and convincing proof. Presumptions may be invoked to impel a conclusion in the absence of evidence to the contrary but when such evidence appears the presumption ends. No producer of bituminous coal currently fixes the sale price of his product by finding the average price at which he has sold his product over a period of six years, and no purchaser of such product determines the price he will pay by the average price paid over a previous six-year period. There is no such stability to the price of coal. The price is fixed by the law of supply and demand. In applying the statute in question, the court is not required to ignore actualities.

According to the evidence, the realization average price per ton of coal sold by

petitioner for 1929 was $1.816; for 1934, $1.982. In 1932 the price dropped to $1.263. How can it be said that these variable prices reflect a dependable average that could be projected into subsequent years? It is worth-while to note that during a period of eight years, petitioner at no time sold its product at $1.66 per ton, the statutory average on which the tax here in question is based. It is unreasonable to infer that the increased per ton realization on the sale of coal at the mine over the average per ton realization for the previous six years is attributable to the increased cost of production or increased taxes.

 It is said that the statutory presumption found in the present Act is not to be construed in its strict sense, because before the Act was passed, the burden of proof rested on a tax claimant and that the use of the word "presumed" was wholly unnecessary, unless it had a meaning in its statutory setting other than that ordinarily attributed to it. E. Regensburg & Sons v. Helvering, 2 Cir., 130 F.2d 507. We think this view is erroneous. The taxes levied under this Act are to be assessed and collected in the same form and manner as other taxes. The exactions may be assessed initially on a return made by the taxpayer, or on a return made in the name of the taxpayer by a Collector or a deficiency may be assessed by the Commissioner of Internal Revenue, but before the Collector may make a return or the Commissioner assess a deficiency, the assessing officer must find facts supporting the assessment. There is no initial statutory burden resting on a taxpayer to show that he does not owe a tax, in fact the burden rests on the taxing officials to show that a taxpayer is indebted to the government. The burden shifts to the taxpayer only after the Commissioner of Internal Revenue has determined there is a deficiency. Wickwire v. Reinecke, 275 U.S. 101, 105, 48 S.Ct. 43, 72 L.Ed. 184; Schlesinger v. State of Wisconsin, 270 U.S. 230, 240, 46 S.Ct. 260, 70 L.Ed. 557, 43 A.L.R. 1224. Initially the taxpayer is entitled to know the basis of law and facts on which the Commissioner asserts deficiencies and until this is done, there is no burden of proof resting on the taxpayer. The presumption set up by the statute here cannot take the place of actual evidence that the taxpayer did not realize the income on which it is taxed.

As we view the facts found by the Tax Court, petitioner sustained the burden of overcoming the statutory presumption that it shifted the excise taxes imposed on it in the form of an addition to the price of its coal and also affirmatively showed that it had not in fact shifted such taxes to others. Tennessee Consol. Coal Co. v. Commissioner, 6 Cir., 139 F.2d 47.

The decision of the Tax Court is reversed and the cause remanded for further proceedings in accordance with his opinion.