**TIMANUS v. COMMISSIONER OF INTERNAL REVENUE.**

No. 5486.

Circuit Court of Appeals, Fourth Circuit.

July 24, 1946.

Scott P. Crampton, of Washington, D. C. (Geo. E. H. Goodner, of Washington, D. C., on the brief) for petitioner.

Paul F. Mickey, Sp. Asst. to the Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., and Helen R. Carloss, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before GRONER, Chief Justice, U. S. Court of Appeals for the District of Columbia, SOPER, Circuit Judge, and CHESNUT, District Judge.

SOPER, Circuit Judge.

This review of the decision of the Tax Court of the United States involves a claim for the refund of cotton processing taxes with penalties and interest in the aggregate sum of $105,267.53 paid between August 1, 1933, and February 28, 1935. The Spencer Corporation, the taxpayer, was placed in the hands of a receiver on April 23, 1934, and the present claim was filed by him on June 24, 1937, and denied by the Tax Court on November 29, 1945. The Agricultural Adjustment Act of 1933, which imposed the tax, was declared unconstitutional on January 6, 1936, in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L. Ed. 477, 102 A.L.R. 914, and the question for decision is whether the claimant has shown that the taxpayer complied with the conditions on allowance of refunds prescribed by the Revenue Act of 1936, Ch. 690, 49 Stat. 1648.

The statute provides in § 902, 7 U.S.C.A. § 644, that no refund of the tax shall be made or allowed unless the taxpayer establishes to the satisfaction of the Commissioner or the trial court that he bore the burden of the tax and has not shifted it directly or indirectly through inclusion of the amount of the tax in the price of the article processed from the commodity with respect to which the tax was imposed. Section 907, 7 U.S.C.A. § 649, of the Act provides that the taxpayer may furnish prima facie evidence that he has borne the burden of the tax by showing that the average margin per unit of the commodity processed during the tax period was lower than the average margin was during the period before and after the tax. The margin in the tax period is ascertained by deducting from the selling price of the commodity processed the cost of the commodity plus the tax. The margin in the period before and after the tax is ascertained by deducting from the selling price of the commodity processed the cost thereof. The tax period means the period during which the processor paid the tax and the period before and after the tax means the twenty-four months immediately preceding August 1, 1933, when the tax went into effect, and the six months from February to July, 1936, inclusive. Either the taxpayer or the Commissioner may rebut the presumption thus created by showing the actual extent to which the taxpayer shifted the burden of the tax by proving that the difference in margins was due to other factors than the tax, such as a change in the type or grade of article or commodity, or in costs of production.

The claimant in the pending case was unable to avail himself of the statutory presumption because many of the taxpayer's records essential to a computation of the average margins in the respective periods have not been preserved, and also because the taxpayer ceased to manufacture on March 26, 1935, when all of its property except the claim for refund was sold by the receiver. In such a situation the average prices paid or received by representative concerns in a similar business may be used to establish the statutory margin; but these facts were not made available in the pending case. There was no evidence of a deliberate destruction of the taxpayer's records. It was merely shown that the receiver failed to preserve them although Article 702 of Treasury Regulations 96, promulgated under Title VII of the Revenue Act of 1936, 7 U.S.C.A. § 644 et seq., requires a taxpayer to preserve his records for four years after filing a claim for refund. Lacking the benefit of the statutory presumption the claimant assumed the burden of proving "the actual extent" to which the tax was shifted. This he attempted to do by offering evidence that the taxpayer suffered an operating loss in the processing of cotton both before and during the tax period and that

the operating loss during the tax period was greater than the operating loss in the seven months immediately preceding the tax period. The Tax Court considered this evidence but held that it was insufficient to show that the increased loss during the tax period was due to the incidence of the tax. The court also said that the evidence offered by the claimant did not establish the losses during the tax period with sufficient accuracy.[1]

In considering claims for the refund of processing taxes such as that involved in the case at bar the evidence as to margins is not limited to the periods prescribed in the statute but may cover other periods if it tends to show who actually bore the burden of the tax. It was so held in Webre-Steib Co. v. Commissioner, 324 U.S. 164, 65 S.Ct. 578, 89 L.Ed. 819, where the court discussed the weight to be given by the Tax Court to statutory marginal evidence when unopposed and when met by countervailing evidence. In reaching its decision the court also gave consideration to margins during a period later than the period prescribed in the statute. The business under examination in the pending case was not seasonal and hence it appears that the comparison offered by the claimant of the losses in the tax period with the losses in the seven months preceding was germane to the inquiry, and it was considered by the Tax Court against the background of the following facts:

Spencer Corporation operated a fine goods cotton mill at Spindale, North Carolina, where it manufactured primarily all cotton combed yarn and cloth. It also manufactured a combination of cotton and rayon cloth and an all-rayon cloth. The manufactured products consisted of shirtings, broadcloth, dress goods, handkerchief goods and the like. The corporation manufactured only on contracts and did not make staple goods for the general market. It sold its goods through an agent in New York who ascertained the requirements of prospective customers and submitted to the mill specifications as to style, construction and quantity of fabric desired. Cost engineers then calculated the cost of production which included the cost of the raw material, the tax while in effect, and the estimated manufacturing, selling and overhead expenses and depreciation. The taxpayer then advised the agent the price to be asked and when a sale was made the agent secured a signed sales note or contract from the buyer. The sales were made against strong competition at the highest price obtainable, but there is no evidence that the prices agreed upon were less than the estimated costs. Manufacture and shipping of the goods followed in due course. The agent guaranteed the accounts and made the collections for the taxpayer.

When the processing tax was enacted the taxpayer undertook to collect it from its customers. After August 1, 1933, when the tax went into effect, the taxpayer billed the tax separately to its customers with respect to orders in hand at the rate of 6c per pound, in the aggregate amount of $8,668.98; and there is no evidence that the amounts so billed were not collected. In respect to orders received after August 1, 1933, the tax was included in the computation of the cost of production at a slightly higher rate than the actual rate of 4.2c per pound of cotton processed and the customers were notified that the tax was added to or included in the sales price.

Notwithstanding these circumstances, the claimant contended that the taxpayer failed to pass on the tax and in support of the contention offered evidence to show that the taxpayer had an operating loss during the tax period, August 1, 1933, to February 28, 1935, of 7.35c per pound which was greater by 7.11c per pound than it had during the first seven months of 1933. The operating loss in the seven month period was .24c per pound. Since the excess loss in the tax period of 7.11c per pound was more

---

[1] The Tax Court pointed out that during the period from April through July, 1933, the sales of cotton goods increased greatly because the industry recognized that legislation then contemplated by Congress would increase the cost of cotton goods; but the court did not find that this circumstance diminished the significance of the comparison of losses in the two periods.

than the processing tax of 4.2c per pound, it was argued that the taxpayer and not the customers must have borne the burden of the tax.

 Similar evidence has been weighed in other cases, both by the Tax Court and by appellate courts on review, in considering the imposition of unjust enrichment taxes as well as claims for refund of processing taxes. It has been held that the mere fact that a net loss was incurred by the taxpayer in the tax period is not conclusive; but in order to recover the taxpayer must also show that the tax and not some other circumstance was the effective cause of the loss. On the other hand, it has been held under varying circumstances that a diminished profit in the tax period may furnish ground for the inference that the taxpayer absorbed the tax and did not pass it on. Compare Byars v. Commissioner, 5 Cir., 138 F.2d 513, Vennell v. United States, D.C., 36 F.Supp. 646, 38 F.Supp. 381, affirmed 3 Cir., 122 F.2d 936, Wilson Milling Co. v. Commissioner, 8 Cir., 138 F.2d 249, Greenwood Packing Plant v. Commissioner, 4 Cir., 131 F.2d 815, with Tennessee Consol. Coal Co. v. Commissioner, 6 Cir., 139 F.2d 47, Cornett-Lewis Coal Co. v. Commissioner, 6 Cir., 141 F.2d 1000, Clinchmore Coal Mining Co. v. Commissioner, 6 Cir., 143 F.2d 112.

 The Tax Court does not controvert the holding of the cases in which diminished realizations in the tax period have been deemed significant, but seeks to distinguish them from the pending case on the facts. In the pending case the Tax Court seems to rely chiefly on a calculation which shows that the sales price in the tax period exceeded the sales price in the seven month period by 19.77c per pound of cotton processed, whereas the manufacturing costs during this period increased only 14.43c per pound, leaving a margin of 5.34c per pound or more than sufficient to cover the processing tax of 4.2c per pound. This calculation would be convincing if it were complete; but it includes only increased manufacturing costs and fails to take into account, as it should have done, the increased cost of raw material and the increased selling and overhead expenses

in the tax period. See Pyramid Coal Corporation v. Commissioner, 7 Cir., 138 F.2d 748, Helvering v. Regensburg & Sons, 2 Cir., 139 F.2d 883. When all of the operating costs are taken into account in the comparative periods, the calculation shows that during the tax period the taxpayer lost 3.11c per pound in cotton processed, exclusive of the tax, notwithstanding the increase of the sales price of the processed commodity. When the tax of 4.2c per pound is added to the cost, the total loss was 7.35c per pound. In short, the receipts were insufficient to meet the increased costs much less the tax. The decision of the Tax Court, as the Commissioner states in his brief in this court and as it appears to us, was based primarily on the correctness of the figures contained in the operating loss statement offered in evidence by the parties to the cause. Since the court made use of only a part of the figures we think that the case should be remanded for further consideration so that all the costs of the business, and not merely the cost of manufacture, may be taken into account in reaching a determination.

We are advertent to the fact that the Tax Court also based its denial of the claim for refund on certain deficiencies in the figures upon which the calculation of comparative losses in the two periods was based. For example, the court pointed out that the opening and closing inventories in the respective periods were missing so that the precise losses in the manufacture of the goods during the two periods were not shown. The claimant endeavored to meet this criticism by testimony that the taxpayer manufactured only on firm orders and that on an average, delivery began eight weeks after the manufacture was started. Therefore it was said that by taking sales for a period commencing two months after the beginning of a period and ending two months following the period, a reasonably accurate result would be obtained; and a computation based upon this method indicated an even greater disparity between the losses in the two periods than that heretofore set out.

Again, the Tax Court referred to the fact that the records preserved by the tax-

payer did not enable it to completely eliminate from the calculations the figures applicable to the manufacture of all-rayon cloth, and hence it was impossible to determine with precision the expenses attributable to the cotton end of the business alone. In response the claimant pointed out that the manufacture of all-rayon cloth was a minor part of the business, as shown by testimony indicating that in the seven month period the cost of rayon was $275.20 and the cost of cotton $159,574.29, while the corresponding figures in the tax period were $30,519.94 and $361,283.29 respectively. The testimony also tended to show that in the year 1933 very little rayon was purchased before October 28, and that in the ordinary course the rayon then purchased would not have been consumed before 1934; and that the total amount of rayon cloth sold during the tax period was $42,583.64 whereas the total sales of all other products in this period amounted to $1,174,428.17. The claimant's adjustments were confessedly based on approximations, deemed to be reasonably safe, rather than upon precise figures; but they indicated a loss on the all-rayon business in the tax period of $2,721.24 whereas the total loss on all other products during this period was $182,702.23.

It is not our purpose to minimize the deficiencies of the taxpayer's records or to assume the function, entrusted exclusively to the Tax Court, to evaluate the evidence and make conclusive findings of fact. There is, however, room for the argument, if all the available figures are taken into account, that the loss in the whole business was so great as to indicate that the taxpayer absorbed the tax; and it may be possible for the trier of facts, despite the absence of precise figures, to make a determination, making adequate and proper allowances to offset the deficiency in the figures, so that the taxpayer will neither be unjustly enriched nor compelled to bear the burden of an invalid tax.

The order of the Tax Court will be reversed and the case remanded for further proceedings.

Reversed and remanded.