FREDERICK A. PAGE *vs.* GEORGE NELSON PHELPS, EXECUTOR, ET ALS.

First Judicial District, Hartford, October Term, 1928.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 2d—decided December 18th, 1928.

576

*Rollin U. Tyler,* with whom, on the brief was *Albert Z. LeMoine* of Framingham, Massachusetts, for the appellant (plaintiff).

*Ernest A. Inglis* and *Samuel D. Elmore* of Boston, Massachusetts, for the appellees (defendants).

WHEELER, C. J. The appellant claimed to have proved, as an inference from the facts proven, which are in the main outlined in the statement above, that there existed at the time of the execution of the will and during the entire time the testator had resided at East Haddam a relationship of special confidence and trust between him and Phelps and Mrs. Daniels. The appellant was the uncle and next of kin of the testator. He would take the estate of the testator in the absence of a will. He was the natural object of the testator's bounty, as that term is used in our testamentary law; it comprises whoever would take in the absence of a will because they are the persons whom the law has so designated, and in this particular, in the ordinary case, the law follows the normal condition of near relationship. The beneficiaries charged with undue influence are Phelps, a second cousin, and Mrs. Daniels a second cousin by marriage of the testator. Error is assigned in the charge to the jury upon the subject of the confidential relation claimed by the appellant to

exist between the testator and Phelps and Mrs. Daniels. Our rule of law upon this matter has been frequently and determinatively stated in our opinions. Our general rule is that those who attack a will as the product of undue influence must assume the burden of proving that charge. But as we say in *Lockwood* v. *Lockwood,* 80 Conn. 513, 522, 69 Atl. 8: "We have recognized one exception to the operation of this maxim in trials upon the probate of a will involving the affirmation of undue influence. In certain cases— where the natural object of the testator's bounty is excluded from participation in his estate, where a stranger supplants children, and the will is in favor of the lawyer drawing and advising as to its provision, or the guardian having charge of his person and estate, or of the person occupying a clearly analogous position of trust—there is imposed upon the proponents of the will, upon the trial of the issue as thus raised, the obligation of disproving by a clear preponderance of evidence the affirmation of the actual exercise of undue influence by such beneficiaries of the will. *St. Leger's Appeal,* 34 Conn. 434, 450; *Dale's Appeal,* 57 Conn. 127, 143, 17 Atl. 757. This exception should not be extended beyond the limitations placed upon it in its recognition. Its justification is to be found in a rule of policy which seeks to prevent the unseemly sight of a stranger occupying such a delicate fiduciary relation, advising a testator to exclude his own family from participation in his estate for the benefit of the adviser. The exception, in practical effect, changes a permissible inference of fact into a necessary presumption of fact."

In *Gager* v. *Mathewson,* 93 Conn. 539, 543, 107 Atl. 1, we refer to two additional classes, religious advisers and physicians as within this class.

In *Kirby's Appeal,* 91 Conn. 40, 43, 44, 98 Atl. 349,

Mr. Justice Thayer writes: "But the rule that the burden is thus shifted . . . has been established in this State. . . . We there [in *Lockwood* v. *Lockwood*] recognize the existence of the exception, call attention to the rule of policy which justifies it, and say that the exception should not be extended beyond the limitations placed upon it in its recognition. The limitations referred to are such relations existing between the testatrix and the legatee as denote special confidence and controlling influence, such as are shown where the legatee is the lawyer who draws the will and advises as to its provisions, or a guardian who has charge of the person and estate of the testatrix, and in like cases of confidence and trust. The prima facie presumption of undue influence arises out of the relation of special confidence and trust, whether the person benefited actually took part in the execution of the will or not. . . . If the evidence shows that such relation existed between the parties, the legatee not being a relative who would be an heir in the absence of a will, the presumption of undue influence arises, and will decide the issue against such legatee unless the jury believe that a preponderance of all the evidence (that of the plaintiff as well as that of the defendant) and the inferences drawn therefrom, show that the legacy was not obtained through undue influence."

Under this rule and upon the facts claimed by the appellees, Mrs. Daniels did not occupy a confidential but a personal relation. The appellant's claim that Phelps occupied toward the testator a position of confidence and trust was based mainly upon the fact that he lived with Phelps on terms of intimacy and affection; that Phelps had been one of the trustees of his mother's estate, of which the testator received the income from 1893 to 1920, when it was turned over to

the testator; that Phelps was a trustee and the active manager of the trust fund from the residue of the estate of the testator's Aunt Annie, from about 1917 to the testator's death, and that two months after his father's decease the testator, who was the sole devisee and legatee, assigned all his interest in the estate, amounting to $200,000, to Phelps and Quigley on their agreeing to pay over the income to him during his life and that they acted as trustees as long as the testator lived, and that the active trustee in the management of the estate and the disbursement of the income was Phelps.

Upon the evidence so offered the question of whether Phelps occupied a position of confidence and trust toward the testator, as the appellant claimed, was one of fact for the jury under proper instruction from the court. If the jury found, and there seems no dispute as to this fact, that the testator had assigned over the far greater portion of his entire property to Phelps and his co-trustee for their direct benefit to hold and manage and pay over to him the income, they might reasonably have further found that the situation was brought within our rule and the burden of proof of undue influence shifted from the appellant to the appellees.

The court incorporated in its charge extensive extracts from the opinion from which we quote, *Kirby's Appeal*, 91 Conn. 40, 43, 44, 98 Atl. 349. This was an accurate presentation of this rule, although it would have been more helpful to the jury had the judge made application of the rule to the facts of the case. The jury asked for further instruction on undue influence. The court complied with the request by instructing the jury in part as follows: "As I said to you a while ago, where a man is in a confidential relation, as that of the lawyer who drew the will, or as a guardian and

had charge of the person, in that case they were to be viewed with a great deal of suspicion if a will appeared in which they were benefited, and in such a case the burden of proof was shifted to them to prove that they did not use undue influence. But it does not seem to me that the evidence here, gentlemen, will justify. It is true that he had been trustee of the property left to Philip in the wills of his mother and his aunt, but that trusteeship had ended before this time. It is also true that he was trustee of the money coming to Philip from his father but such trust was not created by the father but by Philip himself. Philip himself had turned the money over to him to take care of for him, and it doesn't appear that he had any power to withhold the income, or anything of the sort that gave him any power over Philip so that he could compel him to do things otherwise than he desired to do. Therefore I do not believe it is a case which comes under the principle of confidential relations as to the burden of proof and I charge you that the burden of proof that Mr. Phelps exerted some undue influence is on the appellant here, and that they must prove to you by some substantial sort of evidence that appeals to you and that preponderates over the evidence on the other side that he did not exert such undue influence."

The court thus definitely instructed them that the rule as to the burden of proof in a case of confidential relation was not applicable, that that burden remained upon the appellant and did not shift to Phelps.

The court thus determined as a matter of law the issue as to whether, on the evidence submitted by the appellant, a confidential relation existed, instead of leaving that issue to the jury. This we think was error. The appellees urge that, even though the trial court was in error regarding the confidential relation-

ship, "the rule ought not to be applied to them because under the authorities this rule is applicable only in case a stranger takes under a will to the exclusion of the testator's family and the natural objects of the testator's bounty." So, the appellees argue, since Phelps and Mrs. Daniels were those with whom the testator made his home, with whom he was on terms of intimacy and affection, and those who had cared for, and made sacrifices for him which he had reason to, and did appreciate, they were in fact the natural objects of his bounty.

Natural objects of bounty of a testator has, in our law, always connoted one meaning, and that the definite one which is found in the rule by which testamentary capacity is determined. There we say the testator when he makes his will is required among other things "to appreciate his relations to the natural objects of his bounty." This does not mean to those with whom he has been on terms of confidence, intimacy and affection, but those who will take in the absence of a will, his next of kin. *St. Leger's Appeal,* 34 Conn. 434, approving of *Judge Phelps's* charge on page 439. We use the same term in connection with the rule we are discussing in *Dale's Appeal,* 57 Conn. 127, 143, 17 Atl. 757: "In certain cases, where the natural objects of the testator's bounty are excluded from participation in his estate, where strangers supplant children, . . . the law requires the legatee at the outset to assume the burden of proving that his influence did not overcome the free agency and independence of the testator."

The natural objects of one's bounty include his children, yet in *Purdy* v. *Watts,* 88 Conn. 214, 218, 90 Atl. 936, we speak of these as being two classes: "We have held that where a testator cuts off his children, or the natural objects of his bounty, and makes his will

in favor of a stranger holding some special relation of confidence and trust to the testator, the party attempting to sustain the will, where undue influence on the part of such beneficiary is charged, has the burden of proving that it was not procured by such undue influence."

In *Kirby's Appeal*, 91 Conn. 40, 44, 98 Atl. 349, we point out who is the natural object of bounty—"the legatee not being a relative who would be an heir in the absence of a will."

There never, so far as we are aware, has been any confusion on the part of the profession as to who comprised "natural objects of a testator's bounty." Necessarily the law must determine these, otherwise this class would be as variable and uncertain as the opinions of the triers who might be affected by the particular circumstances of a case.

How near must the intimacy be, how close the relationship, how affectionate the conditions of their living. to make the confidential relationship effective?

Practical considerations, such as these, will satisfy the judgment that a legal rule should not be based upon so unstable and changeable a footing. We have, however, drawn clearly the distinction between the confidential fiduciary relationship and the relationship of mere intimacy and service.

It was claimed in *Gager* v. *Mathewson*, 93 Conn. 539, 107 Atl. 1, that Lucy Sullivan, who made her home with the testator and was treated by him as a member of the household, on numerous occasions deposited checks and made purchases for him. The trial court submitted to the jury the question whether Miss Sullivan occupied such a confidential relation as to bring her within our rule and place upon her the burden of showing that she did not unduly use that relationship for her own benefit in getting a principal legacy. We

held that the facts did not place her in the limited class of beneficiaries who are required to disprove undue influence. "We think," we say on page 544, "the charge of the court disregarded the limited application of this exception to the general rule of procedure, and left the jury to infer that the mere fact of a relation of peculiar confidence and intimacy, although purely personal, would put upon Lucy Sullivan the burden of disproving . . . a controlling influence over the testator. This is not the law."

The limitation of the rule is to those who are not the natural objects of the testator's bounty but hold toward him a fiduciary relation and not a mere personal one. This limitation marks with great distinctiveness the difference between the natural object of a testator's bounty in law and one whom the appellees denominate a natural object of bounty because of his relationship of intimacy, service and affection with the testator; but our law makes no such nomenclature. Again, we limit the rule by excluding from its application the relationship of parent and child, examples of which are: *Mooney* v. *Mooney,* 80 Conn. 446, 68 Atl. 985; *Fitzpatrick* v. *Cullinan,* 87 Conn. 579, 89 Atl. 92; *Hills* v. *Hart,* 88 Conn. 394, 91 Atl. 257; *Goodno* v. *Hotchkiss,* 88 Conn. 655, 92 Atl. 419.

*Meriden Savings Banks* v. *McCormack,* 79 Conn. 260, 64 Atl. 338, and *Gager* v. *Mathewson, supra,* are examples where we found no confidential relation. There is a definition of the natural object of a testator's bounty, in *In re Campbell's Will,* 136 N. Y. Supp. 1086, 1096, where the court said it did not mean every distant relative who is entitled to inherit from him (the testator) under the existing canons of descent. The New York court holds the view that the objects designated in this statutory term are near relatives. See also *In re McCarthy's Will,* 126 N. Y. Supp. 699.

We entertain the same opinion as to the error of the trial court that we expressed in *Gager* v. *Mathewson, supra,* at page 544: "It is impossible for us to say that the error pointed out was not material. The verdict was general and may have turned upon the question whether the burden of proof on the issue of undue influence was upon the proponents instead of the contestants."

The appellant on rebuttal offered in evidence two copies of records of courts in the State of Massachusetts purporting to show the conviction of the testator for the criminal offense of operating an automobile while under the influence of liquor.

The trial court excluded these copies. The ruling was right.

As a general rule, judgments in criminal cases are not admissible in civil proceedings to prove the acts charged. *State* v. *Bradnack,* 69 Conn. 212, 215, 37 Atl. 492; *McKenna* v. *Whipple,* 97 Conn. 695, 701, 118 Atl. 40; 2 Freeman on Judgments (5th Ed.) §653. The record discloses no facts which would create in this case an exception to this rule.

There is error and a new trial is ordered.

In this opinion the other judges concurred.