**E. REGENSBURG & SONS v. HELVER-
ING, Com'r of Internal Revenue.**

No. 173.

Circuit Court of Appeals, Second Circuit.

Aug. 3, 1942.

508

Prew Savoy, of Washington, D. C. (Kenneth Carroad, of New York City, of counsel), for petitioner.

Robert N. Anderson, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This cause comes before us upon a petition to review an order of the United States Processing Tax Board of Review, which affirmed an order of the Commissioner denying a petition for the refund of a "processing tax," levied under the Agricultural Adjustment Act upon the claimant, a manufacturer of cigars. The period during which the tax was levied was between October 1, 1933 and May 31, 1935; the "period before and after the tax," § 907(b) (2), 7 U.S.C.A. § 649(b) (2), (which we shall call the "base period"), was therefore from October 1, 1932, to October 1, 1933, together with the period from February 1, 1936, to July 31, 1936. It is agreed that the "margin" calculated in accordance with § 907(b) of the Revenue Act of 1936 for the "tax period," § 907(b) (1), was greater than that for the "base period," § 907(b) (2), by $.19096 and that this was "prima facie evidence" that "none of the burden of such amount was borne by the claimant but that it was shifted to others." § 907(a). The caption of § 907 is "Evidence and presumptions," and § 907 (e) speaks of the "prima facie evidence" as a "presumption." This might mean that, as soon as the claimant had put in any evidence, the office of the presumption was over; or it might mean that the claimant had the burden of proof. That question was reserved in Epstein v. Helvering, 4 Cir., 120 F.2d 427, but we must decide it here. We think that "presumption" cannot in this connection mean burden of proof because the claimant has that burden anyway; on the other hand the section can hardly mean merely to set up a presumption, because no presumption is necessary against one who has the burden of proof. True, a claimant would be helped by a presumption when the "margin" for the "tax period" is less than that for the "base period," but if no more than that was meant, it is difficult to see why it should have been necessary to speak of any "presumption" when the spread between "margins" was against him. For these reasons we think that the section could not have used presumption in the strict sense, but that it meant that when the spread between "margins" is against the claimant,

even though he may in general have otherwise satisfied the conditions of § 902, 7 U.S.C.A. § 644, he must show that the spread was not owing to his shifting the tax.

The claimant at bar assumed that duty, and produced evidence to prove, first that it had not changed its selling price or the quantity or quality of tobacco in its cigars between October 1, 1932 and October 1, 1936, which included both the "base period" and the "tax period"; and second that it had in no other way shifted the tax. It then produced evidence to prove that changes in four "factors other than the tax" absorbed the spread between "margins." The first of these was a decrease in the cost of stripped Havana tobacco used during the "tax period" (though bought before it) amounting to $.11384 per pound (the pound is the "unit"). The second factor was an increase in the percentage of yield of the "filler" per pound, amounting to $.0208. The third was a decrease in the duty upon "fillers" beginning in September, 1934, amounting to $.0504 per pound. The fourth was the fact that two Christmas seasons fell within the "tax period" and only one within the "base period," resulting in an increase of "gross sales value," § 907 (b) (6), of $.0595 per pound. The member who heard the testimony and one other member accepted the claimant's conclusions from this evidence and proposed findings accordingly, which they thought entitled it to a refund of the whole tax. The majority refused to make any findings as to any of the four items, or as to whether there had been any change in the selling price or quantity or quality of the tobacco in its cigars. They did, however, find that the claimant's expenses during the "tax period" were $.17649 per pound higher than during the "base period." That increase reduced the spread between the "margins" to about one cent and a half a pound and would have allowed a recovery of about $26,000, if it were applied pro rata. The majority gave as a reason for disregarding the increase that it did not "rebut the presumption," by which we can only understand that it construed the statute as meaning that unless the whole spread between "margins" was absorbed, the claimant could recover nothing. With that interpretation we do not agree; we think that if a claimant satisfies the Board generally that he has not shifted the tax, and needs only answer a spread between "margins," he may do so

pro rata. Section 907(e) (1) concludes with the following sentence: "If the Commissioner determines that the difference in average margin was due in part to the tax and in part to the increase in other costs, he shall apportion the change in margin between them." This can only mean that the Commissioner shall allocate so much of the spread to "other costs" as is "due" to them, and so much to the tax as is "due" to it; and it necessarily follows that if the claimant succeeds in accounting for part of the spread by changes in his costs of production, he will have proved that he did not shift the tax except as to any unabsorbed balance. We start, therefore, with the premise that the claimant accounted for all but about one cent and a half of the spread—always assuming that it satisfied the Board in other particulars that it had not shifted the tax.

The majority's reasons for refusing to make findings about the four items, on which the claimant relies to absorb the balance of the spread between "margins," were that while the evidence might "explain" the presumption, it did not "rebut" it or "furnish proof" that the spread "was due to changes in 'factors' other than the tax." We are not sure that we understand just what this means; we assume that it followed the Commissioner's argument and that that was the same as it was before us. That is, and probably was, that, since any changes in the cost of the commodity or in "gross sales value" between the "base period" and the "tax period" must have already entered into the computation of the respective "margins" for those periods and therefore into the spread between the "margins," they should not be considered in deciding whether the claimant accounted for the spread "by changes in factors other than the tax"; for to do so would be to count them twice. The result of this reasoning is to permit a claimant to absorb the spread only by changes in his "costs of production," § 907(e) (1) (B), or "in the type or grade of article or commodity," § 907(e) (1) (A). It would follow that, if one claimant could show no changes in his "costs of production," but could show that the spread between "margins" was due to a fall in the price of his raw materials, he could not recover, even though the tax had had nothing to do with the fall in price. On the other hand, a second claimant who could show no change in the price of his raw materials but could show that the spread between "margins" was

due to a drop in wages, rents, power or the like, could recover.

Unless inexorably forced to do so by the language, we should be unwilling to assume that Congress intended a result so much at variance with the general purpose of the act. Costs of production, as ordinarily understood, cover not only the expenses of the manufacture but the cost of the raw material. True, it was necessary in this statute to distinguish between the two, but it would run counter to the theory underlying the presumption not to recognize changes in the cost of the commodity as well as other costs. The presumption is based upon the notion that if for the "tax period" the claimant's profit —estimated by reducing his receipts by the cost of his raw material alone—is not smaller than his profit for the "base period," he must show that that profit was not owing to his having shifted the tax. However, the subtrahend being the cost of the raw material, any decrease in it during the "tax period" will swell the profit and leave him more to explain. Hence if he can show that any such decrease was not "due" to the tax, he has eliminated the profit pro tanto, and with it the spread between "margins." It cannot possibly make any difference whether he eliminates a part of the spread in this way or by showing that it was absorbed by increases in costs of production. Either change will be in "factors other than the tax."

We do not forget that § 902(a) declares that a successful claimant must prove that he "has not been relieved" of, "nor shifted such burden * * * through reduction of the price paid"; and if that means that it is a complete answer to every claim that the cost of the raw material has fallen by the full amount of the processing tax, of course the claimant here must lose. But the section does not mean that for reasons which we have already suggested. Unless the decline in price was caused by the tax, such an interpretation would defeat the general purpose of the act, which was to reimburse those who had paid and who had not indemnified themselves indirectly. A fall in the price of the raw material which would have occurred, tax or no tax, is not such an indemnity; the claimant's loss through the tax cannot be said to have been made good by a profit which he would have enjoyed quite as certainly, if there never had been any tax. Indeed, so to construe the act would ex-

pose it to some of those constitutional dangers which the opinion in Anniston Manufacturing Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143, was at pains to show that it must avoid. Nor do the words of § 902(a) demand that interpretation. A "reduction of the price" would not ordinarily be said to "shift the burden" of the tax, or "relieve" the taxpayer, if the incidence of the tax had had nothing to do with causing it. For these reasons we think that any decrease in the cost of the raw tobacco and in the duty were proper elements to absorb what remained of the spread between "margins."

As to changes in the "gross sales value," more can be said for the argument that the claimant should never be allowed to say that they were not "due" to the tax, so far as they result from rises in the selling price taking place after the tax went into effect. Possibly that was intended in Honorbilt Products, Inc., v. Commissioner, 3 Cir., 119 F.2d 797, though even that is by no means certain. Be that as it may, when the increase in "gross sales value" is not owing to the claimant's raising his selling price, but to some economy in manufacture disconnected with the tax, or to an accident over which he has no control, there is no reason to deny him the same right to count it in absorbing the spread between "margins," which he has as to a decrease in the cost of the commodity. The higher yield from the tobacco and the extra Christmas season were increases of that kind and, so far as proved, should be credited against the spread.

For the foregoing reasons the order must be reversed, for the Board should have passed upon the four items, or at least upon enough of them to absorb the balance remaining after deducting the increase in costs of production. It should also as a preliminary have found whether there had been any increase over the "base period" in the selling price during the "tax period." We are powerless to make findings upon those issues or indeed any other findings. Our powers of review, § 906(g), 7 U.S.C.A. § 648(g), are stated in substantially the same words as our powers to review orders of the Board of Tax Appeals, § 1141(c) (1), Title 26, U.S.C.A.Int.Rev. Code. Since it is well settled that we have no power to make findings in those appeals, Helvering v. Rankin, 295 U.S. 123, 131, 132, 55 S.Ct. 732, 79 L.Ed. 1343, it follows that we have none in these. Therefore,

upon the remand, the Board will not disturb its ninth and tenth findings which fix the spread between "margins" and the increase in the costs of·production during the "tax period," but it should make a finding as to whether there was any, and if any how much, increase in the selling price during the "tax period" over the "base period"; and it should also make findings as to the four items on which the claimant relies, or at least as to so much of them as may prove necessary to absorb the balance unabsorbed by the increase in the costs of production.

Order reversed; cause remanded.