WEBRE STEIB CO., LTD. *v.* COMMISSIONER OF
INTERNAL REVENUE.

No. 148.   Argued December 13, 1944.—Decided February 12, 1945.

*Messrs. C. J. Batter* and *William A. Sutherland* argued the cause, and *Mr. Batter* was on the brief, for petitioner.

*Miss Helen R. Carloss,* with whom *Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr., Mr. Sewall Key* and *Mrs. Maryhelen Wigle* were on the brief, for the respondent.

*Messrs. Richard B. Barker* and *John C. Reid* filed a brief as *amici curiae.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

This is a proceeding brought for recovery of sugar processing taxes paid under the Agricultural Adjustment Act of 1933. The Commissioner having denied in entirety the taxpayer's claim for $8,169.97, the total tax paid by it, taxpayer petitioned for review by the Processing Tax Board of Review, as provided by statute. 49 Stat. 1749. The Board awarded refund in the amount of $3,655.82, and motions for rehearing made by both parties were denied by the Tax Court, which had succeeded to the jurisdiction of the Processing Tax Board of Review. 56 Stat. 798. On appeal, the Court of Appeals for the Fifth Circuit reversed and held that the claim should be denied. 140 F. 2d 768. We took the case to review questions of application of the "prima facie evidence" and "presumption" sections of Title VII, Revenue Act of 1936, on which there was conflict in the circuits. *Commissioner* v. *Bain Peanut Co.,* 134 F. 2d 853, cert. granted, 320 U. S. 721, dismissed on motion of petitioner, 321 U. S. 800; *Helvering* v. *Insular Sugar Refining Corp.,* 141 F. 2d 713; cf. *E. Regensburg & Sons* v. *Helvering,* 130 F. 2d 507.

A new administrative procedure for recovery of taxes paid under the Agricultural Adjustment Act was provided

by Title VII of the Revenue Act of 1936, §§ 901–917, 49 Stat. 1747, 7 U. S. C. §§ 644–59, repealing §§ 21 (d), (e), and (g) of the 1935 amendments to the Agricultural Adjustment Act, 49 Stat. 771–73. The provisions were reviewed at length and their constitutionality upheld in *Anniston Mfg. Co.* v. *Davis,* 301 U. S. 337. In outline, so far as relevant to this case, they are as follows: The claimant is required to prove that he bore the burden of the tax. § 902. Average "margins" per unit of the commodity processed, consisting of the difference between cost of the commodity (plus tax paid, if any) and gross sales value of the articles resulting from the processing, are to be computed for the tax period and a base period; the base period is the period two years preceding imposition of the tax and the six months thereafter (February to July, 1936). §§ 907 (b), (c). If the margins for the tax period are lower than those for the base period, it is "prima facie evidence" that, to that extent, the claimant bore the burden of the tax; if they are not lower, it is "prima facie evidence" that none of the burden was borne by the claimant. § 907 (a). But this "presumption" may be rebutted either by the claimant or by the Commissioner, by proof of "the actual extent" to which the claimant shifted the tax to others. Such proof may include, but is not limited to, certain types of evidence described by the statute. § 907 (e).

For our purposes the material facts must be gleaned from the findings and memorandum of the Board of Review and a stipulation filed by the parties in the Court of Appeals.

Petitioner is a grower and purchaser of sugar cane, which it processes into direct-consumption sugar and edible molasses.[1] It operates during the months of October,

---

[1] This processing was subjected to tax by the Act of May 9, 1934, c. 263, 48 Stat. 670, amending the Agricultural Adjustment Act. See

November and December of each year. The tax went into effect on June 8, 1934 and petitioner paid taxes until November 8, 1935, so that it paid processing taxes—$7,067.12 on sugar and $1,102.85 on molasses—for the months of October, November and December 1934 and October and November 1935. Its average statutory margin for this period was $.01192, and the total number of units processed was 2,256,676 pounds of sugar. Petitioner's base period consisted only of the two years prior to the tax because it did no processing in the six months February to July 1936. Its average statutory margin per unit for the base period was $.01354. Thus the margin during the tax period was $.00162 per unit lower than that during the base period, creating "prima facie evidence" that petitioner had borne the tax to the extent of $3,655.82, the amount of refund allowed by the Board. Petitioner contends that this amount should have been increased by including in the margins its first processing after invalidation of the Agricultural Adjustment Act, which was its processing of the 1936 crop, October 1936 to January 1937. The average margin per unit for this period, computed as for the base period, was $.01582, or $.00228 more than the base-period margin.

Evidence that the tax was not borne by petitioner was as follows: Universal increases in the sale price of sugar were effected on the date of imposition of the processing tax in the amount of $.55 per hundred pounds, to cover the amount of the tax. All of the accounts stated between petitioner and its broker, E. A. Rainold, Inc., respecting sales of molasses made through that broker, including the processing tax as a separate item and as an addition to the sale price of the article. "An account sale, typical of all such accounts, respecting the sales of sugar, made through

especially § 9 (d) (6) (A) and (B) of the Act as amended, 7 U. S. C. §§ 609 (d) (6) (A), (B).

its said broker" bore the notation, "Golden Ridge, 100 Pkts. 10,000# @3.71¢ $371.00. F. O. B. Pltn. Tax Pd. Tax 0.526¢," $.526 being the prevailing rate of processing tax at the time the particular account was rendered. A letter from the broker Rainold to petitioner, dated January 17, 1936, contained the following: "According to memorandum you furnished us on processing tax you paid on 298,017 pounds of sugar, and we have accounted to you for there [three] cars of 800 pockets and part car of 300 pockets and when we get paid for the balance of this part car, or 500 pockets, it will total 3200 pockets or 320,000# on which the processing tax was included in the price. Therefore you have not paid any more tax than you collected and these sugars in warehouse here and elsewhere, that is Chicago, or [are] really tax free."

On the foregoing facts the Board of Review found that "The extent to which the processing tax [was] paid and borne by the petitioner and not shifted to others in any manner whatsoever is $3,655.82," and it awarded refund in that amount. This award was based, the Circuit Court of Appeals thought, "upon the theory that the claimant had established facts sufficient to invoke the statutory presumption that it had borne the burden of the tax" to that extent. In the view of the Court of Appeals, however, the evidence "clearly was sufficient to dissolve the presumption, and since there was no other proof to support any refund, the claim should have been disallowed in its entirety."

Our first question is whether the Board was entitled to base an award upon the statutory "prima facie evidence" or "presumption," or whether the Government's evidence removed the presumption from the case as a matter of law. For, although the Board did not state how it arrived at its award, it seems likely that it relied upon the prima facie evidence provisions and not upon a weighing of the

evidence; petitioner does not assign error to the contrary, although it contends that the evidence supports the Board's award.

The statute, unfortunately, is beset by the ambiguity and the imprecision of definition which are not uncommon with respect to presumptions. But the difficulties of the subject will not excuse us from the duty to apply as best we may a statute Congress has seen fit to enact. At one point it speaks only of "prima facie evidence" and at another it refers to the prior section as creating a "presumption." "Prima facie evidence" alone might be taken to signify only a permissive inference, indicating that the Commissioner or the courts might, if they saw fit, permit a recovery solely on the basis of the margin evidence. See *Crane* v. *Morris*, 6 Pet. 598, 621; *Bailey* v. *Alabama*, 219 U. S. 219, 234; 9 Wigmore on Evidence (3d ed. 1940) § 2494. But the statute's later use of the word "presumption" and the careful detail with which the margin evidence and rebuttal evidence are described argue against such an interpretation, as does the legislative background. A committee report on Title VII, explaining the necessity for amending the existing refund provisions, stated: "It has been contended that while that section [§ 21 (d) of the Agricultural Adjustment Act] states the conditions under which the Commissioner may deny a refund of taxes paid, it does not establish affirmatively any conditions, compliance with which will enable the claimant to secure a refund." Sen. Rep. 2156, 74th Cong., 2d Sess., p. 33. From this it seems clear that the new provision was meant to prescribe a minimum of proof which would require refund in the absence of opposing evidence. Therefore the inference arising from the margin evidence must be a compelled one.

The statute does not tell, however, on what event the existence of the presumed fact must cease to be assumed

by the trier. Does the presumption cease to operate as soon as the Commissioner has met the burden of going forward with evidence to show shifting of the tax, or does it place on him the burden of proof? The Government and the court below, taking the former view, support it with the contention that "It is never the function of a rebuttable presumption to shift the burden of proof." *Commissioner* v. *Bain Peanut Co.*, 134 F. 2d 853, 857. It is unnecessary for us to take so broad a ground, even if it is correct.[2] Dealing only with the particular presumption now before us, we find nothing to indicate that Congress attached exceptional probative value to the margin evidence, or that it desired for any other reason to tilt the scales sharply against the Commissioner rather than merely to even them somewhat in behalf of claimants. There is, for example, no reason to suppose that the Commissioner is better able than the processor to prove where the tax burden fell. On the other hand, the special problem here of preventing unjust enrichment, added to the usual strict examination of claims against the Government, convinces that Congress probably intended to leave the burden of proof on the claimant. Cf. *United States* v. *Jefferson Electric Mfg. Co.*, 291 U. S. 386.

In the absence of any clearer statement in the statute, therefore, we think the presumption is given adequate effect if the burden is placed on the Commissioner of going

---

[2] But see, e. g., *Morrison* v. *California*, 291 U. S. 82, 88–91; *Page* v. *Phelps*, 108 Conn. 572, 143 A. 890; *Weber* v. *Chicago, R. I. & P. R. Co.*, 175 Iowa 358, 151 N. W. 852; *Bond* v. *St. Louis-San Francisco R. Co.*, 315 Mo. 987, 288 S. W. 777; *Holzheimer* v. *Lit Brothers*, 262 Pa. 150, 105 A. 73; Morgan, *Instructing the Jury upon Presumptions and Burden of Proof* (1933) 47 Harv. L. Rev. 59, 77–83, *Some Observations Concerning Presumptions* (1931) 44 Harv. L. Rev. 906; Bohlen, Studies in the Law of Torts (1926) 636, 637, 648–53; American Law Institute, Model Code of Evidence, Rule 703.

forward with evidence sufficient to support a finding that the claimant did not absorb the tax. Once such evidence is presented, the presumption becomes inoperative and the issue is to be determined as if there had never been a presumption. The statute declares, however, that the presumption may be rebutted by proof of "the actual extent" to which the burden of the tax was shifted. This language appears to mean that the presumption may be rebutted pro tanto, and not necessarily all at once or not at all. Thus it does not cease to operate on introduction of evidence merely sufficient to support a finding that some of the tax was shifted. It must be evidence sufficient to support a finding that the entire tax was shifted. Short of that, the presumption is not eliminated but only diminished to the extent that the rebuttal evidence will support a contradictory finding. See *Regensburg & Sons* v. *Helvering,* 130 F. 2d 507, 509. When the margins are unfavorable to the taxpayer and favorable to the Commissioner, it is unnecessary, of course, to place a burden of going forward with evidence on the claimant, for he has that burden anyway, as well as the burden of proof. Whether this means that the statute's language making the presumption operate in favor of the Commissioner is superfluous, or that in such a case the presumption must be given a different effect than when in favor of the claimant, we do not now decide. Cf. *Regensburg & Sons* v. *Helvering, supra.*

On the view we take of the statute, the proof introduced by the Commissioner made the presumption inoperative. We certainly could not say that, viewed by itself, the Commissioner's evidence would not permit a finding that petitioner shifted the entire burden of the tax. It tended to show that in all dealings with its broker the petitioner added the amount of the tax to the sale price and itemized it separately. That this was true as to all sales of molas-

ses seems to be conceded. It was also true, or so it might be found, as to a substantial part of the sugar sales and therefore inferentially as to all such sales. Petitioner raises some question as to the proper inference to be drawn from the sugar account and the broker's letter quoted above. But at least the broker's remarks that "the processing tax was included in the price" and "Therefore you have not paid any more tax than you collected" are unmistakable in their meaning. All of this evidence is among the kinds expressly mentioned by the statute as tending to rebut the presumption. More important, the statute appears specifically to provide that introduction of any evidence of this particular kind shall be sufficient to rebut the entire presumption. It states that the presumption may be rebutted by proof that the claimant modified sales contracts to reflect the initiation, termination, or change in amount of the tax, or "at any such time" changed the sale price of the article, or "at any time" billed the tax as a separate item, or indicated "by any writing" that the sale price included the amount of the tax. It then declares, "but the claimant may establish that such acts . . . do not represent his practice at other times." § 907 (e) (2). This seems clearly to mean that when any examples of the named practices are proved, it may be inferred that they represent the uniform practice of the claimant and the burden becomes his to prove that they do not. Since the Commissioner proved that not only in a few cases but in a great number the tax was indicated in writing to be included in the sale price, we think there is no doubt that he fully rebutted the presumption within the meaning of the statute.

The second question is whether, with the presumption out of the case, there is evidence from which the Tax Court would be entitled to award a refund to petitioner in any amount. The court below, although it remanded the

cause, apparently meant for it to be dismissed, for it said, "since there was no other proof to support any refund, the claim should have been disallowed in its entirety." Literally, of course, this cannot be true, for the margin evidence remained in the case for whatever it might be worth apart from the presumption. With this the Government agrees, and it concedes that, unless we can say that the evidence would not rationally support a finding in favor of petitioner, the case must go back to the Tax Court for decision on the evidence rather than on the presumption. We must determine whether there is evidence which is legally sufficient for administrative action, but we may not weigh it. *Dobson* v. *Commissioner*, 320 U. S. 489.

The fact that margins for the tax period are lower than those for the base period has some logical tendency to establish that the burden of the tax was borne by the processor. See *Anniston Mfg. Co.* v. *Davis*, 301 U. S. 337, 354. There are, to be sure, other and conflicting inferences which may also be drawn. As the margins are defined, the drop might be due to a decline in the demand for the processed goods, or to a decrease in the yield of the raw commodity, or to an increase in the price of the raw commodity. But we have no basis for saying that the margin thus defined does not tend to be comparatively stable and that a fall coincident with imposition of a tax would not more likely reflect the tax than a change in other factors. We suppose the taking of average margins over a base period has some tendency to produce that result. And the Tax Court's special experience might support such an inference. Cf. *Dobson* v. *Commissioner, supra.* Congress apparently believed that the rational connection was strong enough to justify basing a finding of absorption on the margin evidence alone. For, as we have seen, Congress intended that in a case where the margins were

favorable to the claimant and no other evidence was introduced the claimant should be entitled to a refund, and there appears no reason of convenience or policy which would lead to such a rule in the absence of rational connection. For all these reasons we think a finding of absorption which was based solely on the margin comparisons would not be irrational.

Nor is the Commissioner's evidence so conclusive as to deprive the margin evidence of all significance. It permits but does not require a finding that petitioner had a uniform practice of billing the tax as a separate item. Even though such a practice be inferred, there is no evidence to show how far petitioner succeeded in its effort to pass the tax on, except for the evidence that there was a general rise in the market on a date some months before petitioner's processing began. The margins are some evidence that the price may not have responded continuously to the effort to shift the tax. The fact may be that neither side's evidence goes very far toward demonstrating where the burden of the tax fell; [3] the inquiry is at best a difficult one. But we do not think it can be said that the record is devoid of rational support for a finding that petitioner absorbed some of the tax. Accordingly we must remand the case for a weighing of the evidence, including, of course, such further evidence as the Tax Court may think it proper to receive in view of the way in which the case has been tried. In doing so we intimate no opinion, of course, as to whether petitioner has sustained the burden of proof placed upon it by the statute.

Since the case must go back, it is necessary to pass upon a further question raised by petitioner. Petitioner, as we have noted, was not processing during the six months,

---

[3] See Johnson, *AAA Refunds: A Study in Tax Incidence* (1937) 37 Col. L. Rev. 910.

February to July 1936, designated by the statute for computing margins after the tax period. For such a case the statute provides: "If during any part of such period the claimant was not in business . . . the average prices paid or received by representative concerns engaged in a similar business and similarly circumstanced may with the approval of the Commissioner, where necessary for a fair comparison, be substituted in making the necessary computations." § 907 (c). Contending that there were no similarly circumstanced concerns, petitioner sought to use the figures of a later period, that of its own 1936 production, in computing the base-period margins, which would have made those margins higher. We think the Board and the court below were correct in holding that the statutory method of making a prima facie case is exclusive and that the 1936 evidence might not be so used. The statute's restrictions, however, have reference only to the presumption; they do not exclude other evidence generally relevant on the issue of whether the tax burden was shifted. The 1936 experience, though it could not help petitioner to create a favorable presumption, was entitled to be given whatever probative value it might independently have had and, subject to the usual principles of admissibility, was therefore admissible. *Anniston Mfg. Co.* v. *Davis,* 301 U. S. 337, 355–56.

The judgment below is modified and the cause is remanded to the Circuit Court of Appeals with directions to remand to the Tax Court for proceedings in conformity with this opinion.

Mr. Justice Rutledge, dissenting.

I doubt that Congress intended to involve the award of refunds of processing taxes in the abstruse learning of "disappearing presumptions." In my opinion the terms "prima facie evidence" and "presumption" may be taken

to have been used interchangeably in the statute. I think no more was intended than to authorize a finding in accordance with the margin evidence, if no other were presented; and in case opposing evidence should be offered, to allow inference either way according to the weight of the proof, taking into account the margin evidence. Hence, in this aspect of the case, I would rest on the decision of the Processing Tax Board of Review, which on the record reasonably may be considered to have been reached in this manner.

I also think the statute forbids going outside the base periods prescribed for comparative data. To hold otherwise would nullify the base period provisions of the Act, which I think are valid. The cause of action here rests on a waiver of the sovereign immunity to suit which Congress may make upon such conditions as it chooses. *Nichols* v. *United States,* 7 Wall. 122; *Luckenbach S. S. Co.* v. *United States,* 272 U. S. 533, 536; *Minnesota* v. *United States,* 305 U. S. 382, 388. Allowing in the evidence concerning other periods, though not for the purpose of computing margins, accomplishes indirectly what the base period provisions were designed to prohibit.

Accordingly, I think the judgment of the Circuit Court of Appeals should be reversed, with directions to affirm the decision of the Processing Tax Board of Review.

MR. JUSTICE BLACK concurs in these views.