## DE NOBILI CIGAR CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5.

Circuit Court of Appeals, Second Circuit.

Feb. 6, 1946.

Kenneth Carroad, of New York City (B. R. Dreyer, of New York City, on the brief), for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Robert N. Anderson, and Louise Foster, Sp. Assts. to Atty. Gen., for respondent.

Before SWAN, CHASE and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The taxpayer, a New York corporation, was engaged in the manufacture and sale of cigars and smoking tobacco. Between October 1, 1933 and May 31, 1935 it paid processing taxes of $118,481.87, plus interest, under the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq., which was later held invalid. United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914; Rickert Rice Mills v. Fontenot, 297 U.S. 110, 56 S.Ct. 374, 80 L.Ed. 513. The taxpayer's claim for refund of said processing taxes having been disallowed by the Commissioner of Internal Revenue, the present proceeding was instituted [1] and by petition to this court the taxpayer seeks reversal of the Tax Court's decision denying any refund.

The allowance of claims for refund of processing taxes is governed by Title VII of the Revenue Act of 1936, 49 Stat. 1747, 7 U.S.C.A. § 644 et seq., and is conditioned on the claimant establishing that the burden of the tax was borne by him and not shifted to others. Section 902; Webre Steib Co. v. Commissioner, 324 U.S. 164, 65 S.Ct. 578. The statute provides (section 907) for the computation of "the average margin per unit of the commodity processed" and creates a rebuttable presumption that the claimant did not bear the burden of the tax if the average margin was not lower during the tax period than during the period before and after the tax. [2] Three factors enter into the determination of average margins: (a) gross sales value, (b) cost of commodity and (c) units of commodity. Computation of average margins for the tax period is determined by deducting from the gross sales value of all articles processed during such period the cost of the commodity processed, plus the processing tax paid with respect thereto, and dividing the sum so ascertained by the number of units of the commodity processed during such period. For the period before and after the tax the average margin is similarly computed but without reference to processing taxes paid during the tax period. Section 907(b) (1), (2), (3).

As a result of its margin computations the Tax Court determined that the margin

---

[1] The proceeding was commenced in the United States Processing Tax Board of Review but that Board was abolished before it had rendered a decision, and the record made before it was transferred to the Tax Court pursuant to section 510 of the Revenue Act of 1942, 56 Stat. 967, 26 U.S.C.A. Int.Rev.Acts.

[2] In the case of tobacco the pre-tax period is limited to the twelve months immediately preceding the effective date of the processing tax, October 1, 1933, and the post-tax period is the six months from February to July 1936, inclusive. Section 907(c). The pre-tax period and post-tax period together comprise what is called the base period.

of the tax period exceeded that of the base period by more than 4 cents per unit (that is, per pound) or a total of $186,972.61. This gives rise to a statutory presumption adverse to the taxpayer's claim of having borne the burden of the tax and the Tax Court held that the evidence was insufficient to overcome such presumption. Accordingly the court found that the taxpayer shifted to others the entire burden of the tax and denied it any refund. The taxpayer has not deemed it necessary in its brief to set forth the numerous subsidiary findings which lead up to this ultimate finding, and our opinion will likewise assume familiarity with the findings without repeating them. The taxpayer does not dispute the accuracy of the computations if the method used is permissible, but it does take issue with the method of computation adopted by the Tax Court. It also asserts that, even if such method be correct, the resulting unfavorable presumption was overcome by the evidence, and that error was committed by admitting in evidence certain exhibits.

■ The taxpayer's most fundamental objection to the method of margin computation adopted is that the Tax Court combined the margin data on cigars and smoking tobacco into one computation instead of computing separate margins for each. The taxpayer's cigars were manufactured from fire-cured leaf tobacco purchased by it. In their manufacture "clippings" were left as a by-product. The smoking tobacco was made for the most part from these clippings; they were supplemented, when their quantity was insufficient, by "lugs" purchased in the market. The taxpayer contends that leaf tobacco and clippings are two different commodities, hence the margins for the articles processed from them must be separately computed; and that separate margin computations for cigars and smoking tobacco show that the taxpayer is entitled to a refund of at least $22,540.22 of the processing tax paid by it on smoking tobacco. The Tax Court's view that jointly computed margins are proper in this case is supported by the following considerations: the taxpayer filed a single claim for refund, in which the margins were jointly computed by it; the cost of clippings was carried on its books at the cost of the original leaf tobacco; it advertised its smoking tobacco as made from cigar clippings; and there is no market for cigar clippings, which weakens the hypothetical argument that had the taxpayer manufactured its smoking tobacco from clippings which it purchased, the clippings would be a commodity distinct from leaf tobacco. Moreover, the taxpayer's contention seems to conflict with Article 602 of Treasury Regulations 96 set out in the margin.[3] This regulation was not mentioned in I. L. Walker Tobacco Co. v. Commissioner, 6 Cir., 129 F.2d 464; consequently the Walker case, which the taxpayer says should have been followed, is of doubtful persuasive authority. Furthermore, that case is distinguishable because there the smoking tobacco and chewing tobacco were manufactured from separately *purchased* commodities (burley and scrap), while here the clippings were made from the same leaf tobacco as was processed into cigars. Republic Cotton Mills v. Commissioner, 4 Cir., 147 F.2d 278, certiorari denied May 21, 1945, 325 U.S. 862, 65 S.Ct. 1201, another case relied upon by the taxpayer, is even less closely in point. Not only was Art. 602 of the Regulations not applicable, since the case did not deal with tobacco, but the facts requiring separate margins for the operations of Mill 3 were entirely different from the situation in the case at bar. We think the Tax Court was justified in combining the data on cigars and smoking tobacco into a single margin computation.

■ The taxpayer also quarrels with the Tax Court's method of computing each of the three factors which enter into the equation yielding the statutory margins. The first factor, "gross sales value," is defined to mean the total of the quantity of each article derived from the commodity processed during each month multiplied by the claimant's sale prices current at the time of the processing for articles of similar

[3] "Art. 602. Limitation as to number of claims.—A separate claim shall be filed with respect to each commodity on the processing of which the claimant paid processing tax. In the case of tobacco, all market classifications of tobacco shall be considered a single commodity and, therefore, there shall be included in one claim all of the market classifications of tobacco on the processing of which the claimant paid processing tax. Only one claim shall be filed by any person with respect to the total amount paid by such person as processing tax on the processing of a single commodity (or of all market classifications of tobacco)."

grade and quality. Section 907(b) (6). The parties disagree as to how to determine "sales prices current." In arriving at gross sales value for each period the Commissioner's method, which the Tax Court approved, was to take the actual prices shown on the taxpayer's invoices, add the commissions paid to agents, divide the result by the number of cigars and quantity of smoking tobacco sold, and thus reach an average price, which was multiplied by the number of articles processed. The taxpayer insists that the "sale prices current" should have been determined from price lists sent out to its customers. The government's investigator, Mr. Taylor, testified that the prices on the invoices did not always coincide with the prices shown on the price lists, and for that reason he did not use the price lists. The Tax Court adopted the Commissioner's figures. We see no error in so doing. Indeed, it seems a more accurate and less theoretical method than the taxpayer's. One ground of objection to the use of invoices is that orders were invoiced at the price of the day of the order, but since practically all orders were filled within 48 hours after the order was received we think the invoices showed "current" prices, particularly since we believe no more accurate method is suggested by the taxpayer. Objection is also made to the use of average prices for cigars; but the taxpayer has not succeeded in explaining to us why the use of average prices is in conflict with the statute.

█ As regards the second factor, "cost of commodity processed," section 907(b) (5) provides that it shall be the actual cost of the commodity processed if the accounting procedure of the claimant is based thereon. Here the controversy centers upon the cost of the cigar clippings which the taxpayer used in manufacturing smoking tobacco. The taxpayer's own books carried the clippings processed into smoking tobacco at the original tobacco cost. It contends that this cost should be reduced to coincide with the purchase price of "lugs" which it bought to supplement the supply of clippings. The Tax Court rightly rejected this contention not only because it contradicted the cost set up on the taxpayer's books but also because the "lugs" were an inferior and non-comparable article. Moreover, we do not see how the taxpayer could gain by the adoption of his method of computation; if the cost of that part of the leaf tobacco ultimately destined to

become smoking tobacco were to be decreased to correspond to the cost of lugs, the cost of the tobacco used for cigars would have to be correspondingly increased.

There is also disagreement on the third factor in the margin equation, "units of commodity processed." Section 907(b) (7). The parties agree on the total pounds of tobacco processed, but disagree on how the poundage should be allocated between cigars and smoking tobacco. But this particular controversy has become immaterial by reason of our holding, discussed under the first point, that the computation of combined margins for cigars and smoking tobacco is permissible.

█ It is also noted that even if the taxpayer's method of computation were adopted, the statutory margins as to cigars would still be unfavorable to the taxpayer without the making of special "adjustments on cigar data." Such adjustments were urged before the Tax Court and it refused to allow them. The solution of accounting problems is peculiarly within the specialized competence of the administrative tribunal. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. We see no basis for reversal of the Tax Court with respect to the refusal of special adjustments.

█ The taxpayer further contends that even if the statutory margins are unfavorable the resulting presumption against it has been overcome by the evidence presented. The Tax Court thought not. Its finding No. 10 was to the effect that the petitioner increased the price of both cigars and smoking tobacco in the tax period over the pre-tax period and, being cognizant of the processing tax prior to its initiation on October 1, 1933, "took steps to attempt to recoup it from its customers." There is substantial evidence to support this finding. The petitioner's entire case is really nothing but an attack upon the method of tax accounting adopted by the Tax Court. As already noted this is a field in which the administrative determination is substantially unassailable unless the tribunal has acted contrary to the statutory standards established for its guidance. We are not persuaded that the statute has been violated.

█ The taxpayer's final contention asserts error in the introduction of respondent's exhibits 9, 10 and 11. The basis of the objection was an agreement between counsel, evidenced by letters, to the effect

that copies of material obtained by the commissioner's investigation of the taxpayer's records would be furnished to its counsel at least 30 days before the trial, and any material not so furnished would not be admitted in evidence. The exhibits in question had been given to the taxpayer's counsel only a week before the hearing. Thus counsel was not taken by surprise; he did not ask for a continuance to allow more time for an examination of the exhibits, and his expert witness was allowed to testify again to make corrections in his computations which he claimed were necessary if the respondent's challenged exhibits were considered. Moreover, the challenged exhibits were summarizations and computations based on figures already in evidence. Under the circumstances we think there was no error in admitting the exhibits and certainly no reversible error.

Decision affirmed.