**BERNARD G. BRENNAN CO. v. UNITED STATES.**

No. 9197.

Circuit Court of Appeals, Seventh Circuit.

Dec. 18, 1947.

Wm. R. Brown, Charles J. Calderini, and W. Robert Brown, all of Chicago, Ill., for appellant.

Theron L. Caudle, Sewall Key, Helen R. Carloss, Frederic G. Rita and Robert N. Anderson, Assts. to the Atty. Gen. and Otto Kerner, Jr., and J. Albert Woll, U. S. Attys., and Joseph M. Solon, Asst. U. S. Atty., all of Chicago, Ill., for appellee.

Before EVANS and MINTON, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

The taxpayer, a meat packing company, brought this action for refund of floor stock taxes, imposed by the Government pursuant to the Agricultural Adjustment Act, 7 U.S.C.A. § 616. The tax was heretofore paid and this taxpayer brought this action to recover the sum which it asserts was unlawfully collected. The trial court held for the Government on the ground that taxpayer's claim for refund "does not comply with the provisions of Section 903 of the Revenue Act of 1936 [7 U.S.C.A. § 645], because it contains no evidence from which it can be determined whether or not the plaintiff shifted the economic burden of the tax."

It is taxpayer's earnest contention that it conclusively met this burden by showing

that the realized sales price of the products taxed was lower than the value of the 12,076,995 pounds of pork products in its inventory, November 5, 1933, the date of the *imposition* of the tax.

Plaintiff's original claim contained evidence showing that the sales value of hog products declined for the next three months following the imposition of the tax; and its amended claim contained a statement to the effect that there was a decline in value of plaintiff's "actual total pound and dollar sales during comparable periods before and after the imposition of the tax."

Taxpayer was engaged in the business of slaughtering hogs and selling the hog products at wholesale. A floor stock tax of $81,998.42 was imposed on its inventory on November 5, 1933. An additional assessment of $135.86 was made in April, 1934, making the total tax paid $82,135.28. Of this sum only $77,232.06 was sought by plaintiff's amended claim, because limited refunds or reimbursements had been made. The claim for refund was filed June 30, 1937, and the amended claim December 16, 1939. It was denied June 12, 1943.

Plaintiff claims the pre-tax value of the hog products was $910,421.28 and the said products sold for only $866,226.84, or $44,194.44 less. These facts constitute the "conclusive" evidence upon which plaintiff relies for its recovery.

It appears that plaintiff's taxed inventory of its products was sold over a period of five months.[1] At the Government's request it furnished its sales invoices and other records covering thousands of sales of individual articles during the months from October, 1933 to April 15, 1934. The inventory covered 55 different articles, which the Government's agents classified into three categories, dependent upon whether the sales price was such as to recoup, was less than, or equal to, an amount sufficient to cover the tax.[2] Plaintiff also showed the length of storage time of the hog products and the applicable storage charge for the respective periods of storage.

Plaintiff states that recapitulation of the table quoted would show that the total tax borne would be at least $51,498.76 [3] when the net results of rise or decrease of market

[1] Between November 6, 1933 and April 14, 1934.

| [2] | Total Pre-Tax Value | Total Post-Tax Recovery | Net Increase in Price | Floor Tax Attributed Thereto |
|---|---|---|---|---|
| Group A (Sold at less than pre-tax value) .. | $439,797.86 | $351,194.09 | $(88,603.77) | $37,435.40 |
| Group B (Sold at increase less than amount of tax paid) . | 244,723.98 | 256,785.00 | 12,061.02 | 26,124.38 |
| Group C (Sold at increase larger than tax paid) ......... | 225,899.44 | 258,247.75 | 32,348.31 | 19,030.80 |
| Total all Articles .... | $910,421.28 | $866,226.84 | $(44,194.44) | |

| [3] | | Burden Borne |
|---|---|---|
| Group A (no price increase) ............................... | | $37,435.40 |
| Group B (increase less than tax) | | |
| Tax Paid ............................. | $26,124.38 | |
| Price Increase ....................... | 12,061.02 | 14,063.36 |
| Group C (increase more than tax) | | |
| Tax Paid ............................. | $19,030.80 | |
| Price Increase ....................... | 32,348.31 | None |
| Total Burden Borne ........................... | | $51,498.76 |

value of the three classifications were included in the calculations.

The Government produced as a witness one Morgan, an accountant. He was an employee of the Department of Agriculture during the period in question. He testified as to the general market prices of hog products during that period, and in part relied upon certain publications to refresh his recollection as to the precise rise or change in price of hog products after the announcement of the imminence of the tax and after it became effective.

■ Plaintiff objected at the trial, and objects here, to the competency of the documentary evidence of market price, in view of the specific evidence presented by it that its sales' price was less than the inventory value at time of imposition of tax. Plaintiff also points out that the publications give statistics on only 30 of the 55 items sold by it, and as to 60% of its inventory, no such statistics were given. Such evidence was admissible. Cudahy Packing Co. v. United States, 7 Cir., 152 F.2d 831.

This case has been most earnestly and ably presented by the taxpayer, and its position can not be lightly rejected. It makes a plausible and appealing contention, i. e., that the market value of the pork products at the date of imposition of the tax was higher than the price realized for said product—and therefore it argues it is self-evident that the taxpayer absorbed the tax.

Taxpayer has co-operated with the Government in the furnishing of a vast amount of material, invoices, etc., relative to the individual sales. The Government agents have examined and tabulated the information therein contained. Upon all the evidence, the Commissioner, and the District Court, found that the taxpayer had not sustained the burden placed upon it by the Statute, of proving that it did not shift the incidence of the tax.

■ Whether or not such tax has been shifted is a question of fact.

How a taxpayer may prove such a fact may be, in some instances, a perplexing matter. The difficulty which the taxpayer experiences, however, does not relieve it of the burden of showing it assumed the burden of the tax and did not pass it on to the consumer.

The Government contends that when the price of the product rises at the time of the imposition of the tax, in an amount equal to the tax, it is conclusively evident that the tax was shifted. The Government witness testified:

"The market opened fully steady on green regular hams, but a full cent higher than previous week's closing figures due to the addition of the Federal Tax and these prices have been substantiated by actual sales made over the week-end for delivery this week."

Testimony was also received to the effect:

"Market prices are advancing all along the line in anticipation of floor taxes. The processors naturally desire to avoid losses due to this taxation and to establish market value to overcome floor taxes and the early demand of meat would indicatee fairly good progress in this direction."

Plaintiff answers this contention by saying that its products were not sold the *day* after the tax was imposed, but during a period of five months thereafter, when the market price varied greatly and when sold the price was substantially lower than the market value as of the date of the imposition of the tax.

We must accept the fact that plaintiff sold its products at market price. Also we must accept the fact the market price the day after the imposition of the tax was higher than theretofore by the amount of the tax. Presumably the market price continued to reflect said tax—notwithstanding the fact that the market price sank below the price at which it stood at the incipience of the tax, or before tax imposition.

In other words, the crucial unknown elements in this situation are the other economic factors, which, irrespective of the tax, determined the *market* value. The usual factors, namely, seasonal variation and unusual supply or demand, served to raise or lower the market price of hog products. A point was reached so low that, notwithstanding the inclusion of the tax element in the sales price, that price was still below the price at which the products were taxed in November, 1933. But does that prove

that taxpayer did not add the tax and pass it on to the consumer? We think not.

There are many decisions involving tests of the quantum of proof, etc., necessary to entitle a processor to recover the tax.

Out of this wealth of decisions we conclude that a finding by the trial tribunal that the tax has or has not been borne by the processor, can not lightly be disregarded (Webre Steib Co. v. Com'r, 324 U. S. 164, 65 S.Ct. 578, 89 L.Ed. 819). A second deduction fairly to be drawn from these decisions, is that the burden of the presentation of a proper claim, and of evidence sufficient to sustain it, is a well-nigh insuperable one. This may be a harsh burden, but we are governed by it.

Taxpayer's amended claim predicates its position on an explanation of the basis of its argument, a statement of the "sales prices per unit current for the period." A second schedule shows "sales value of taxed inventory at time of processing." Its third schedule shows "sales value of taxed inventory at time of sale." It then states

"The foregoing schedules show that the taxed floor stocks at the time of production in the three months prior to the tax had a value of $5.63756 per unit and that *during the three months following the imposition of the tax this sales value* per 100 pound live weight unit *decreased* to $4.75967 per unit.

"This decrease in sales value * * * following the imposition of the tax is supported by the similar tables and data contained in Edginger's Report, which tables have been included in the original claim for refund filed by claimant, and the claimant bore the burden of the floor tax in the full amount * * *."

The original claim stated

"The market price of hog products declined in the period of sale of the floor stocks. The following market values per 100 pounds live weight are taken from bulletin issued by the U. S. Department of Agriculture * * *" (then follows a chart showing prices for various categories of products for October, November, December of 1933, and January of 1934 nd showing a decline in such prices).

The conclusion which the Commissioner and the District Court made, was that the taxpayer had not sustained the burden on it resting that it did not shift the tax. A similar problem is covered by the Statute, 7 U. S.C.A. § 649 which provides it shall be *prima facie evidence* that the tax has been borne where it is shown that the "average *margin* per unit of the commodity processed was lower during the tax period than the average *margin* was during the period before and after the tax." We think it significant that the Statute is predicated not on market *value* before and after as compared with the tax period, but on average *margins* for said periods. The Statute specifically defines margins, Sec. 649(b) (1)

"* * * The margin * * * shall be computed as follows: From the gross sales value of all articles processed by the claimant from the commodity during such month, deduct the *cost* of the commodity * * * and deduct the processing tax paid with respect thereto * * *."

We think the Congress advisedly chose to use "margins" (which we presume approximates the ordinary concept of "profit") rather than the easily ascertained "market" value, or sale value, which taxpayer sought to prove. As the Supreme Court said in the Webre Steib Co., [324 U. S. 164, 65 S.Ct. 583] supra:

"The fact that margins for the tax period are lower than those for the base period has some logical tendency to establish that the burden of the tax was borne by the processor * * *. There are, to be sure, other and conflicting inferences which may also be drawn. As the margins are defined, the drop might be due to a decline in the demand for the processed goods, or to a decrease in the yield of the raw commodity. * * *"

■ We feel the emphasis in this case must be placed on taxpayer's failure to meet the burden of proof which it bore of showing it bore the burden of this tax, and to disprove that the decline in market was nothing but a general and natural decline due in no wise to the imposition of a tax. Taxpayer's reticence to take up the issue of lower profits before and after the tax, sufficient to encompass the tax, is important.

The burden was on it to negative any possible basis for arguing the burden was shifted.

■ As the controversy is one of fact, the findings of the District Court are important.

The court found, among other things

"Plaintiff, at all times before and after the imposition of the floor stocks.tax, sold its products at prevailing market prices."

"On November 15, 1933, the date of the imposition of the floor stocks tax, the market prices at which the plaintiff sold its products were increased by the amount of the tax."

"The plaintiff has failed to prove that it absorbed the burden of the floor stocks tax."

Our inquiry is of necessity directed to the presence of substantial evidence to sustain these findings.

In the face of the evidence which shows the price of the commodity was raised by the amount of the tax when it was imposed, we can not say there was no evidence to support a finding that plaintiff shifted the burden of this tax to the consumer. Much less can we say that the plaintiff met the burden which rested upon it of proving that it absorbed said tax.

We think it clear that when it is shown the amount of the tax was added to the price at which the plaintiff held its meat products, it by no means follows that because the general price of said products went down as usual in the fall of the year, that plaintiff lifted the tax, which it had placed upon the commodity, from said products. It cannot be said that it follows that because the price of meats went down, plaintiff lifted the amount of the tax from said commodities. In other words, the price of the meat would have gone down another cent if the tax had been lifted. At least the District Court was justified in so finding.

We have been unable to distinguish this case from the case of Cudahy Packing Co. v. United States, 7 Cir., 152 F.2d 831, and in the face of that decision we must affirm.

The decree is

Affirmed.